Moses Perrin, Appellant, *vs.* William H. Oliver, Respondent.

APPEAL FROM AN ORDER VACATING A JUDGMENT TAKEN PRO CONFESSO, AND DISSOLVING AN INJUNCTION.

A party is never in contempt by an omission to plead, except in cases where the object of the bill is to compel an answer.

An order vacating a judgment taken *pro confesso* upon failure to answer, and allowing the Defendant to plead, is discretionary with the Court making the order, and not subject to review in this Court.

Although it is better practice to move for the dissolution of an injunction after answer filed, it is not error to incorporate this motion with one for leave to plead; and a conditional order, dissolving the Injunction upon the coming in of the answer, will not be reversed.

That the Legislature has power to amend or repeal a charter where it has reserved the power to do so in the charter itself, admits of no doubt, and the Act of the Legislature of Wisconsin, passed in 1852, and that of the Territorial Legislature of Minnesota, approved March 6, 1852, so modified the Act of the Legislature of the Territory of Wisconsin of March, 1848, granting to Wm. H. Nobles, his representatives and assigns, exclusive ferry franchises for the term of ten years across Lake St. Croix, from the mouth of Willow River to a point directly opposite thereto, for a distance of two miles, as to limit the enjoyment of exclusive franchises to a distance of a quarter of a mile.

W. H. Semmer, and Ames & Nelson, for Complainants and Appellants.

Rice, Hollinshead & Becker, for Respondent and Appellee.

Points and authorities relied upon by the Defendant and Appellee.

*First,* It was proper to open the order *pro confesso,* as the Defendant showed a good excuse for his default. 1 *Barb. Chy. Pr.* 595. 1 *Hoff. Chy. Pr.* 551–2.

*Second,* The order dissolving the Injunction was proper, as there was no equity in the Bill. *Gordon's Digest L. U. S., Art.* 1112 *and note Cox vs. State,* 3 *Blackford R.* 193, *Ord.* 1787, *Art.* 4; *Act Cong.* 20*th Feb.* 1811, *and* 8*th April* 1812, *and* 4*th June,* 1812. *Laws Mich.* 1837, *p.* 154; *ib.* 1837, 8 *p.* 99.

*Third,* If there was equity in the Bill, the answer, setting up the modifications of the grant to Nobles by the Legislature of Wisconsin and Minnesota, showed conclusively that, *in fact,* there was no foundation for the Injunction.

*By the Court*—Welsh, C. J.    This case is brought here by appeal from the decision of the District Court for the County of Washington, sitting as a Court of Chancery.

The Appellant filed his Bill in that Court on or about the 20th day of June, A. D. 1852, stating, among other matters, that in March, 1848, the Legislature of the Territory of Wisconsin gave the exclusive right to William Nobles, his heirs, executors, administrators or assigns, to establish and maintain

a ferry for the period of ten years, across Lake St. Croix, from the mouth of Willow River to a point directly opposite, and that by the terms of said grant, no other ferry could be established within two miles of the same ; that the said Charter also contained a provision that the same might be amended or repealed by any future Legislature of the Territory or State within which such Ferry might be situated ; that as Assignee of said Nobles, the Appellant, about the first day of May, 1850, established a Ferry across said Lake St. Croix, according to said grant, and has ever since maintained the same ; that the Defendant, Oliver, has, since said assignment, established and kept up a Ferry across said Lake, and within two miles of the line of the Ferry established by Appellant; that said Oliver persisted in transporting passengers and freight at his Ferry against the wishes of Appellant. The Bill then prays for the amount of ferriage received by said Oliver, and also for an Injunction restraining the said Oliver from ferrying within two miles of the mouth of Willow River.

Pursuant to the prayer of the Bill, an Injunction was issued on the 22d day of June, 1852. On the 4th day of August, 1852, an order was entered in the cause, that the Bill of complaint be taken as confessed, the Defendant having failed to answer said Bill as he was required.

Soon after the entry of the order *pro confesso*, the Defendant made a motion founded upon an affidavit, excusing the neglect to answer, to vacate the order, and for leave to file an answer, a copy of which was exhibited, and for a dissolution of the injunction.

Upon the hearing of this motion, the Court ordered that the order *pro confesso* be vacated ; that the Defendant have leave to answer within ten days from the filing of the order, and that the injunction be dissolved.

It is from this order that the Appeal is taken.

Upon the argument it was urged that the Defendant was in contempt for not answering, and therefore had no right to make any motion in the case. Admitting that the defendant was in contempt, it certainly would be proper for him to take some steps to purge the contempt. Now, in this case the Defendant gives a reason for not answering in season, and the Court con-

sidered the excuse a good one; and thus the contempt, if there was one, was purged. But the Defendant was not in contempt. A party is never guilty of a contempt of Court by merely neglecting to plead. By the ancient English practice, the whole process of contempt was necessarily resorted to before an order to take a bill as confessed could. be obtained. The object of resorting to this process was not to punish, but to enable the Complainant to get his order *pro confesso*. By our law, the order *pro confesso*, upon the neglect of the Defendant to answer, may be obtained in a summary manner. In a case where an answer is needed, where it is the object for which the bill is filed, as in the case of a bill of discovery, the Defendant might undoubtedly be proceeded against for not answering; but in this case the order taken was that the bill should be taken as confessed, on account of the neglect to answer. If the Appellant's object was to get an answer, he could have done so by getting a proper order, but he did not see fit to do so. In my opinion, the Defendant had a right to make the motion in question. Whether the order should be vacated, and the Defendant allowed to plead, was a matter resting in the discretion of the Court, and cannot be reviewed here, but if we were called upon to decide the question I have no doubt of the correctness of the decision in this regard.

It would, perhaps, have been more strictly correct to have made a distinct motion to dissolve the injunction after the answer was put in, but as the answer was exhibited, and the injunction was not discovered until after the time allowed for filing the answer, I do not consider the course taken as so erroneous, as upon an Appeal to vitiate the order.

I now come to the only question remaining in the cause,— Was the injunction properly dissolved?

To decide this question it is proper to examine the Defendant's answer.

The answer admits all the facts charged in relation to the grant to Nobles, but avers that the charter set up by Complainant was modified and partially repealed by an Act of the Legislature of Wisconsin approved April 16th, 1852, which repealed that section of the charter which forbids the establishment of any other ferry within two miles of Complainant's ferry; and

that by an Act of the Legislature of the Territory of Minnesota approved March 6th, 1852, that part of the grant which gave Nobles and his assigns an exclusive right for two miles was repealed: and that by the same Act said Nobles and his assigns were allowed the exclusive right, as provided in the original Act, of landing for the distance of one-fourth of a mile each way from a point on the west bank of Lake St.-Croix, known as Fisher's Ravine.

The Defendant also avers that he established a ferry on Lake St. Croix, and carried passengers between certain points, upon which points he had permission of the owners to land; and that the western terminus of his said ferry is at least half a mile from the point designated as the western terminus of Nobles' original ferry grant. The Defendant also avers that he was duly licensed by the County Commissioners of the County of St. Croix, Wisconsin, and the County of Washington, in this Territory.

On the part of the Defendant, it was urged:

*First.* That the grant to Nobles of an exclusive ferry right was invalid: it being in conflict with the Ordinance of 1787, which made the Lake St.-Croix a common highway forever free to the citizens of the United States.

*Second.* That if the Legislature had the right to impose this restriction, the restriction has been so modified by the Legislative authority as to legalize the acts of the Defendant.

From the view I have taken of this case it will not be necessary to consider the first objection, and I will at once proceed to examine the second.

It was strenuously urged upon the argument, that the Legislature had no power to repeal or modify Nobles' grant. Were this a new question it might be necessary to enter into an examination of it at length, but the question is not an open one. The power of the Legislature to amend and repeal a charter, where it has the power reserved to do so in the charter itself, is, in my judgment, too plain and well-settled to admit of a doubt.

The only question, then, is: Have the Legislature so modified Nobles' grant as to legalize the acts of the Defendant.

The Legislatures of Wisconsin and Minnesota have each re-

pealed the exclusive grant to Nobles to the extent of two miles. As the result of this legislation, it would seem to me that the acts complained of by the Appellant were not an infringement of his legal rights.

It may be urged that a ferry right is necessarily exclusive, and, consequently, that the Complainant has an exclusive right unless his charter is repealed altogether. This position, I think, is not tenable. If the grant to Nobles was a mere emanation of a royal prerogative, or if it was a grant of some right which the citizen did not before possess—as, to build a bridge across a navigable stream—this position might be correct. In this case, however, every citizen has a right, without any grant, to transport passengers and freight across Lake St.-Croix, and to land upon the shores, provided the owner of the land does not object. How, then, can the granting of a charter to one man exclude another, unless the terms of the charter are exclusive?

The conclusion, therefore, at which I have arrived is, that the Defendant had been guilty of no infringement of the legal rights of the Appellants, and that the order of the District Court must be affirmed.

Order affirmed.