### IN THE

# SUPREME COURT OF THE STATE OF GEORGIA,

# AT MILLEDGEVILLE,

## MAY TERM, 1854.

Present—JOSEPH H. LUMPKIN,
      EBENEZER STARNES, } Judges.
      HENRY L. BENNING.

---

No. 55.—JOHN CASON, plaintiff in error, vs. SARAH CASON,
defendant in error.

[1.] The neglect or refusal of the defendant, to comply with the order of the
Court, requiring him to pay temporary alimony, pending the divorce, does
not authorize the Court to deny to the party his right to defend the libel.

Divorce, in Elbert Superior Court. Tried before Judge
GIBSON, September adjourned Term, 1853.

Sarah Cason commenced her libel for divorce, against John
Cason. Pending the suit, she applied for temporary alimony,
which was granted by the Court. John Cason failed to comply
with the order; and refusing to excuse himself therefor, was at-
tached by the Court, for a contempt, and the Sheriff ordered
to arrest and imprison him. When the libel for divorce came
on to be heard, counsel for libellant objected to the counsel for
the defendant being heard, so long as the defendant stood in

contempt of the Court and its order. The Court granted the motion, and this decision is assigned as error.

Other exceptions were filed, but it is unnecessary to repeat them here.

J. L. HARRIS, representing VAN DEUZER, for plaintiff.

·T. R. R. COBB, for defendant.

*By the Court.*—LUMPKIN, J., delivering the opinion.

[1.] This was a libel for divorce, brought by Sarah Cason against John Cason, her husband. When it was called ·for trial, counsel for plaintiff announced themselves ready. The ·Court inquired if the defendant was ready; whereupon, counsel for plaintiff insisted that the defendant should not be heard, because he had not paid the temporary alimony allowed by the ·Court in the case, and thereby stood in contempt of the Court. Upon the application of the plaintiff's counsel, His Honor, Judge GIBSON, passed the following order: "it appearing to the Court, that John Cason is still in contempt, by refusing to pay the temporary alimony allowed by the Court, ordered, that said cause proceed *ex parte*".

Robert McMillen, the attorney of defendant, objected to the granting of this order, contending that the failure to pay the alimony, was not a contempt; and if it was, that it did not deprive the defendant of his right of resisting the libel. He further asked the permission of the Court to bring the defendant into Court, in order that he might purge himself of the alleged contempt, by showing his inability to comply with the judgment of the Court, to pay temporary alimony. The Court over-ruled the motion, holding, that he would not revoke or modify the order of the Court, directing the defendant to be attached, for failing or refusing to comply with the order of the Court, to pay temporary alimony. He further decided, that under the circumstances, John Cason should neither be heard, personally,

Cason *vs.* Cason.

nor by his attorney; but that the cause should proceed at the instance of the plaintiff, alone.

To all of which decisions, counsel for defendant excepted.

No law or practice has been produced, to justify the judgment of the Court below, in this case. We are entirely satisfied that none such can be shown. The contempt imputed to the defendant, was for disobeying a rule of the Court, requiring him to pay temporary alimony. Attachment was the appropriate punishment; and the record shows that this had been granted; but we shall search in vain, for a precedent, to sustain the Judge, in denying to the party his right to defend the libel, because he had failed or neglected to perform his duty in another proceeding. Especially, when it was the plaintiff, and not the recusant husband, who was pressing the cause to trial; and still more especially, when the attorney of the defendant was asking for the privilege of suspending the cause, until his client could be sent for and brought into Court, to purge himself from the contempt which he was charged to have committed. Why was this privilege withheld? Why should the party be punished by imprisonment, to say nothing of the loss of his right to be heard, in defence of the libel, provided he could clear himself of the alleged contempt?

We deem it unnecessary to notice the attempt which has been made to enlist the sympathies of the Court, in behalf of this good lady. It is the usual case of "Patience on a monument," &c. Instead of "sweet seventeen, with the bloom of the plumb, unbroken, upon her cheek, and all the blossoms of youthful innocence, flowering and flourishing around her", the testimony shows, that this much injured wife, was a buxom young widow, (*I suppose*,) with a strapping daughter of eight or ten years old, who allied herself to the defendant, a hoary and dilapidated octogenarian of eighty-four! Her own evidence shows, (for there was none other admitted before the Jury,) that in the only fight they ever had, *she fell on top*. And we are assured by Major Harris, who has represented the venerable husband, with his usual zeal and ability, that in *every conflict* between this couple, his veteran client was worsted. And we doubt not

but that this is true. We speak as an *old* man, and not as a Judge. Our friend, the Major, has well stigmatized these meretricious marriages, as the conjunction of December and May. , From such unnatural unions, domestic comfort and conjugal felicity need not be expected. And eloquence bestowed on such family broils, is mere *Arcadian fancy*—painting ·from the scenes of one's early reading. Except "squatter sovereignty", there is, perhaps, no theme more jejune of true eloquence.

Judgment reversed.