Davis v. Flagg.

ERWIN DAVIS

v.

JENNIE E. FLAGG et al.

1. The holder of two bonds, each of which is secured by a mortgage on the same premises, who procures an attachment to be issued on the amount due upon one bond, and has the goods of the obligor, which are in the dwelling on the mortgaged premises, levied upon by the sheriff, who leaves the goods where he finds them, but puts a man in charge of them, who, to do so, sleeps in the dwelling, and who is instructed to let Mrs. Flagg, the obligor, and husband, enter at all times, is not liable, as mortgagee, for rents and profits, and for waste, on a bill filed to foreclose the mortgage to secure the other bond, although the creditor paid such watchman.

2. Where a non-resident asks the aid of the courts of this state, and then refuses to submit himself to examination as a witness, the court may dismiss his bill, or assume as true the material facts alleged, about which he refuses to appear and testify.

*Mr. Cortlandt Parker*, for complainant.

*Mr. A. Q. Keasbey*, for defendant.

BIRD, V. C.

There were two mortgages on the lands of the defendant, Mrs.

NOTE.—It has been held that, although a complainant is in contempt, the defendant cannot, on that account, have the bill dismissed, *Ricketts* v. *Mornington*, 7 Sim. 200 ; *Gould* v. *Twine*, 22 W. R. 398 ; or prevent complainant's dismissing it, *Smith* v. *Smith*, 2 Blackf. 232; or oppose its amendment, *Chatterton* v. *Thomas*, 36 L. J. Ch. 592; or refuse to produce deeds relating to the matters in issue and admitted by defendant's answer to be in his possession, *Plumbe* v. *Plumbe*, 3 Y. & C. Exch. 622; or prevent a replication being filed, *Story* v. *National Ins. Soc.* 2 N. R. 351; or prevent complainant's moving for a stay of execution after he has appealed, *Herring* v. *Clobery*, 12 Sim. 410 ; see *Brinkley* v. *Brinkley*, 47 N. Y. 40 ; *Heinlen* v. *Cross*, 63 Cal. 44 ; *Matthews* v. *Chase*, 41 Ind. 356 ; *Ross* v. *Griffin*, 53 Mich. 5 ; *Hewitson* v. *Hunt*, 8 Rich. 106 ; or his moving to discharge an order against him, *Futroye* v. *Kennard*, 2 Giff. 110 : *Parker* v. *Dawson*, 5 L. J. Ch. 108 ; *Hill* v. *Bissel*, Mos. 253. And see, further, *Hurd* v. *Robertson*, 1 Ch. Cham. (Can.) 3 ; *Marshall* v. *Marshall*, 2 Hun 238.

Flagg; one of them was given to the Mutual Life Insurance
Company for $4,000, and one to Abram Baldwin for $11,000.
Baldwin procured an assignment of the former to himself, and
filed a bill to foreclose the latter, and also, it is alleged, filed a bill
to foreclose the former in the name of one McCoon, to whom it had
formally been assigned. The bill filed in the name of McCoon was
dismissed on motion of his counsel July 9th, 1881. On March
the 17th, 1881, Baldwin filed his bill to foreclose the $11,000
mortgage. On the 24th day of the same month he procured
an attachment to be issued against the goods of the defendant,
Jennie E. Flagg, upon the bond which the $11,000 mortgage
was given to secure. The sheriff, by virtue of the writ so issued,
seized upon the goods of Mrs. Flagg which were in the dwelling
house upon the premises covered by said mortgages. At the
time of such seizure by the sheriff the goods were stored in said
dwelling and packed as if in a condition for moving. The sheriff
at once put the said goods in the custody of a person and au-
thorized him to keep watch over them, leaving them, however,
in the dwelling-house of Mrs. Flagg. This person, so deputed
to watch over and care for the goods, continued in possession
under said authority for several months, but was paid for his
services by Baldwin through the sheriff. At length, however,
an arrangement was made between the counsel of the plaintiff

In *Bradbury* v. *Shawe, 14 Jur. 1042,* a husband and wife were complainants
in a suit against three defendants, and moved for an injunction to stay certain
proceedings at law instituted by the defendants against the husband alone,
which was refused, with costs, and an attachment therefor issued. *Held,* that
two of the defendants might have the suit in chancery stayed until the husband
had cleared his contempt; see *Bickford* v. *Skewes, 10 Sim. 193.*

In *Bonesteel* v. *Lynde, 8 How. Pr. 226,* the plaintiff had been subpœnaed to
produce certain documents as evidence, and was convicted of contempt for his
wilful failure to do so. He afterwards obtained possession of the documents,
knowing that a subpœna *duces tecum* had been issued for them. *Held,* on the
trial, that his excuse, that he had lost or mislaid them, was inadmissible, and
his complaint was stricken out, with costs.

The same rule applies to a defendant, *Wilson* v. *Bates, 9 Sim. 54, 3 Myl.
& Cr. 197;* *Haldane* v. *Eckford, L. R. (7 Eq.) 425;* *Fry* v. *Ernest, 9 Jur. (N.
S.) 1151;* *King* v. *Bryant, 3 Myl. & Cr. 191;* *Everett* v. *Prythergch, 12 Sim. 363;
O'Dell* v. *O'Dell, 1 Hog. 217 ;* *Perrin* v. *Oliver, 1 Minn. 202 ;* *Lane* v. *Ellzey,
4 Hen. & Munf. 504 ;* *Mead* v. *Norris, 21 Wis. 310 ;* *Koehler* v. *Dobberpuhl,*

Davis *v.* Flagg.

in the attachment suit and the sheriff, by which the person so left in charge by the sheriff should be relieved of his sole responsibility in part, only being required to occasionally visit the premises, and to that extent continue or maintain his authority, whilst another person was to be put in charge more constantly, the compensation therefor to be divided between the two. This continued until the close of the litigation between the parties with respect to their rights under said mortgage, with the exception that for about six weeks, during which period a man by the name of White (a sea captain, in the employ of Baldwin) with his wife, actually occupied the house on the premises in question, taking their meals elsewhere. The other persons in charge only slept in the house.

The attachment was pressed, the declaration was filed, bond was given, pleas were filed ; the proceedings upon the foreclosure of the $11,000 mortgage were pressed to a final determination in the court of errors and appeals, in which court it was decided that the said $11,000 mortgage was void. The decree final was entered in the cause on the 29th day of May, 1884. On the 31st day of May the attachment suit was discontinued. Out of these proceedings and this conduct of the mortgagee, Baldwin, springs the question which I am now called upon to consider. From these facts it is insisted that Baldwin was liable as mort-

*56 Wis. 497 ;* but, see *Hewitt* v. *McCartney, 13 Ves. 560 ; Sprye* v. *Reynell, 1 De G., M. & G. 712 ; Cranstown* v. *Goldshede, 2 Y. & C. 73 ; Heyn* v. *Heyn, Jac. 49 ; Mussina* v. *Bartlett, 8 Port. 277 ; Saylon* v. *Mockie, 9 Iowa 209 ; McClung,* v. *McClung, 40 Mich. 493 ; Peltier* v. *Peltier, Harring. (Mich.) 19; Johnson* v. *Pinney, 1 Paige 646 ; Wallis* v. *Talmadge, 10 Paige 443 ; Ellingwood* v. *Stevenson, 4 Sandf. Ch. 366.*

But an answer, in a divorce case, will be stricken out, for failure to pay alimony, only in extreme cases, *Casteel* v. *Casteel, 38 Ark. 477 ; Peel* v. *Peel, 50 Iowa 521 ; Baily* v. *Baily, 69 Iowa 77 ; Allen* v. *Allen, 72 Iowa 502 ; Cason* v. *Cason, 15 Ga. 405 ; Dwelly* v. *Dwelly, 46 Me. 377 ; Walker* v. *Walker, 20 Hun 400, 82 N. Y. 260 ;* see *Gant* v. *Gant, 10 Humph. 464.*

In New York, the power of the court is limited by statute, *Birdsall* v. *Birdsall, 4 Wend. 196 ; Rice* v. *Ehele, 55 N. Y. 518 ;* and in California, *Johnson* v. *Superior Court, 63 Cal. 578.*

But, in Connecticut, such a statute has been held not to apply to proceedings in chancery, *Roger's Manf. Co.* v. *Rogers, 38 Conn. 121 ;* and see, as to Florida, *Edwards, ex parte, 11 Fla. 174 ;* and Georgia, *Cobb* v. *Black, 34 Ga. 162.*—REP.

Davis *v.* Flagg.

gagee in possession, and obliged to account for the rents and profits during the period of time which elapsed between the 24th day of March, 1881, and the 31st day of May, 1884, and that, although the present proceedings are in the name of Davis it is only another name for Baldwin, and a device adopted for the purpose of avoiding the consequences which naturally or legally flow from the action of Baldwin under the said attachment proceedings, under which he had what is claimed to be possession of the mortgaged premises as mortgagee.

For the sake of the argument it will be admitted that Baldwin was the owner of both mortgagages, and is now really the owner of the mortgage being foreclosed in this suit. Let it also be admitted that the possession, to the extent that there was actual possession of said mortgaged premises, was the possession of Baldwin and not of the sheriff, nor of the law. These admissions present the case, of course, most strongly in favor of the defendants, Flaggs, and enable us to look at the law, as I understand it, in New Jersey as well as elsewhere. I think that in order to charge a mortgagee who is in possession of mortgaged premises, with rents and profits, and to hold him responsible for the proper management of the estate in a suit under the bill to foreclose the mortgage, it must appear that he is in possession under and by virtue of the mortgage against which such rents and profits are sought to be set off or recouped. This relation does not exist, nor can the rights which flow therefrom be enforced unless it appears that his possession is under the mortgage. The case of *Onderdonk* v. *Gray, 4 C. E. Gr. 65,* seems to be conclusive authority to this effect, and this view is sustained, I think, by the reasoning in *Russell* v. *Ely, 2 Black (U. S.) 575;* and in *Bennett* v. *Austin, 81 N. Y. 308;* and in *Madison Ave. Baptist Church* v. *Oliver St. Baptist Church, 73 N. Y. 82.*

In the case before me, if Baldwin be the real actor, he was not pursuing any claim under the mortgage which is now being foreclosed. And in the attachment proceedings, he was not proceeding upon the mortgage, nor by virtue of any power or right therein given or existing, but by virtue of and under the bond which had been given by Mrs. Flagg, totally separate from

Davis v. Flagg.

the mortgage. The fact that the officer of the law found the goods of the defendant upon the premises which were covered by the mortgage, and took possession of those goods, and retained the possession of them in or upon the said mortgaged premises, cannot, it seems to me, by any possibility, create the relation of mortgagor and mortgagee between the occupant, whoever he may be, whether the sheriff by virtue of the law, or Baldwin and the Flaggs, so as to charge the former with rents and profits, or to make him responsible for waste. I do not say that the sheriff may not so demean himself as to be liable to the owner of the premises; nor do I say that if Baldwin, the plaintiff in the attachment, had made use of the forms of law for the purpose of procuring an opportunity to commit a trespass or other wrong, that one or both might not be responsible to the owner for such injury. But however great the injury, in such case, might be, I know no rules of law, nor any method of reasoning, so far as we are permitted to go in determining the rights between mortgagor and mortgagee, by which the mortgage now in suit can be paid, in whole or in part, by set-off to the amount of such injury, or by recoupment. No such matters are permitted to be set off as against the amount due upon the mortgage, however burdensome it may appear, and that has been repeatedly so decided in New Jersey, unless it be shown that it was at the time, or has been subsequently to the contract, incorporated in the contract, by an agreement of the parties to that effect. *Parker* v. *Hartt, 5 Stew. Eq. 225; Williamson* v. *Fox, 3 Id. 488; Williams* v. *Doran, 8 C. E. Gr. 385; Bird* v. *Davis, 1 McCart. 467.*

Again, as I look at this case, and the law which seems to be my guide, I cannot come to the conclusion that if what was done under the attachment and the possession was done in the name of and for Baldwin, that it can be said he had any lawful or rightful possession as against the mortgagor. As I have said, the claim was not under the mortgage, but under the attachment upon the bond. Baldwin could not possibly have made any resistance to the mortgagor had the latter demanded possession. Had the mortgagor actually put any one else in possession, Baldwin would have been powerless. In such a case, Baldwin

certainly could not have collected rents, nor in any lawful sense exercised any control over the property. This, it seems to me, must be decisive in this case against the claim of the defendants. *Bennett* v. *Austin, 81 N. Y. 308, 316 ; Russell* v. *Ely, 2 Black (U. S.) 575.* For, as intimated, he cannot get the possession by a technical device and then claim that his possession is lawful. But in this case, possession was never claimed against Mrs. Flagg, except at the last moment, of which I will speak hereafter. When the sheriff authorized the first man he put in charge to care for the goods, he expressly told him to make no resistance to Mr. and Mrs. Flagg entering the premises. And this charge upon his servant was never withdrawn, nor was it ever violated until after the attachment had been dissolved, and Mrs. Flagg demanded possession, and then, she was delayed less than twenty-four hours in procuring possession, and obtained it through the sheriff. There is no evidence to show that Mrs. Flagg ever claimed possession before, during the pendency of the attachment proceedings. In any event, I cannot find a way by which I can take the case out of the rules laid down in the foregoing cases. These distinctions, I think, are sustained in the cases of *Lord Trimleston* v. *Hamill, 1 B. & B. 377,* and *Blennerhassett* v. *Day, 2 Id. 104, 125.*

Although what I have said disposes of the merits of the case, another question of great importance presents itself. This arises from the fact that parties, by the law, are permitted to be witnesses, and not only in their own behalf, but may be called by the adversary. This suit was instituted in the name of Davis, and during its progress the defendant desired to examine him with respect to his interest in the mortgage, and the rights or claims of Baldwin, his alleged assignor. The counsel for Davis made every reasonable and proper effort to have him present, but, the residence of Davis being out of the state, it was impossible for the court, by the ordinary process of the court, to compel his attendance. Repeated delays took place, in order that Mr. Davis might be accommodated, and that his testimony might in some way be produced and presented in the cause. However, all efforts failing, counsel for the defendant insisted that it was

their right to have the complainant suffer a dismissal of his bill of complaint because of his refusal to attend and be examined. Although the court believed it was competent in all respects to visit this, or any other similar pecuniary penalty, upon the complainant, it hesitated to do so, under the hope and in the belief that the generous efforts of his counsel would bring him before the court or would end in the production of his testimony; but, this failing, the court announced that, in case of his continued obstinacy, it would deal with the questions arising in the cause the same as though it were conceded that Baldwin was the real suitor. After this he submitted himself to examination in the city of New York, in his own dwelling-house, according to an agreement between the counsel. This examination continued for some time, when an altercation arose between the counsel for the defendant and Davis which ended in a separation and a discontinuance of the examination, notwithstanding Davis's apology and the expression of a desire upon his part that the examination should continue. I do not stop to inquire whether or not that examination might not have proceeded in the private dwelling of the complainant, but do assert that it was one of the inestimable rights of the defendant in the suit to have Davis, the complainant, present in court to be examined as other witnesses are obliged to be examined. He could not, nor can any suitor, escape this obligation by withdrawing himself from the jurisdiction of the court. Nothing would be more absurd, nothing could be more ridiculous, than for the court to say its arm is paralyzed, its efforts are hopeless, when a foreigner, having sought the jurisdiction of our courts, should say you have no longer any control over me because I am beyond the process of your tribunals. The penalty to be visited in such cases is discretionary, but, that it is, in such case, within the power and entirely competent and proper for the court to say to the complainant that the penalty of your disobedience shall be the dismissal of your cause, there can be no doubt. Such a judgment could have been effectual—indeed it was the only judgment that could, at the time, have been pronounced with effect; all efforts at persuasion, all means of prudence were utterly unavailing; to

say, therefore, that the court should be thus mocked would be making the law tribunals of the country the laughing-stock of the citizen.

But, instead of dismissing his bill, as I have intimated, it was announced that the court would assume the allegation that Baldwin was the real owner of the bond and mortgage in this suit as a fact, and would deal with the case accordingly. But, although I have given the defendants the benefit of this allegation, I find myself obliged to conclude that they have not made good their claim to charge Davis with rents and profits and for waste, as a mortgagee in possession. The petitioners are entitled to the costs of the petition and the order opening the decree, because the court decided that they had a right to be heard, but all other costs they are chargeable with, the same as though they had made their defence upon their answer before final decree and had failed. I will so advise.