Richardson, Ch. J.,
delivered the opinion of the court:
The Secretary of War, in his letter transmitting the matter-involved in this case, states the questions upon which he desires, the opinion of the court to be “ whether paragraph 1006 of the Army Regulations of 1863, repeated in the Revised Army Regulations of 1881, is a valid and lawful regulation, having-the force of law to the extent of protecting the paymaster who makes a payment in accordance therewith, or independently of that regulation whether he is protected in case of payments made in good faith under the circumstances therein set forth from the consequences of an error of fact in the certificate of a commissioned officer, on whose certificate the payment may be made, the particular case in question being the payment by Maj. William Smith, paymaster IT. S. Army, to Second Lieut. Charles M. Carrow, Seventh Cavalry, on April 30, 1879, of pay of $125 for said month.”
We shall first consider the Army regulation in general.
The Constitution provides, in article 1, section 8, paragraph *458 14, that Congress shall have power “ to make rules for the government and regulation of the land and naval forces.”
It has been argued here and elsewhere that this provision •deprives the President of authority to make such rules of his ■own motion, or even when previously authorized by legislative action, on the ground that the power is exclusive in Congress and can not be delegated; and so that all rules for the government and regulation of the land and naval forces made by the executive are void and of no. effect without the enactment ■by Congress in the form of approval or otherwise.
Congress has established rules and articles for the government of the armies of the United States, commonly called “Articles of War” (act of 1806, April 10, ch. 20, 2 Stat. L., 359, now Revised Statutes, sec. 1342).
For the making of other and ordinary regulations Congress has from an early day proceeded upon the idea that the power ■might be delegated to the President, and has passed several ■acts expressly conferring such authority (act of March 3,1813, ■ch. 52, sec. 5; 2 Stat. L., 819; act of April 24, .1816, ch. 69, sec. 9; 3 Stat. L., 298; act July 15, 1870, ch. 294, sec. 20; 16 Stat. L., 319; act of March 1, 1875, ch. 115; Supplement to Rev. Stat., 149; and the act of June 23, 1879, ch. 35, sec. 2; Supplement to Rev. Stat., 494, under which the edition of 1881 was published).
Congress has three times recognized or approved existing regulations:
(1) The Act of April 24, 1816, ch. 69, sec. 9 (3 Stat. L., 298), provided that “ the regulations in force before the reduction •of the Army be recognized, as far as the same shall be found applicable to the service, subject, however, to such alterations as the Secretary of War may adopt, with the approbation of .the President.”
(2) The Act of March 2, 1821, ch. 13, sec. 14 (3 Stat. L., 616), •enacted “ that the system of ‘ general regulations for the Army’ compiled by Major-General Scott shall be, and the same is hereby, approved and adopted for the government of the Army of the United States and of the militia, when in the service of the United States.” This section was unconditionally repealed by the Act of May 7, 1822, eh. 88 (3 Stat. L., 686). As to this act Attorney-General Wirt advised that, notwithstanding such repeal, the regulations having received the *459 sanction of the President, continued in force by tbe authority of the President in all cases where they did not conflict with positive legislation (1 Opins., 549).
(3) The Act of July 28, 1866, ch. 299, see. 37 (14 337, 338), required the Secretary of War to prepare a code of regulations for the government of the Army, and enacted ‘‘the existing regulations to remain in force until Congress shall have acted on said report.” No such action has been tab on.
It is well settled that Army proved by Congress have the absolute force of law equally with other legislative acts until repealed by the same power. Congress so treated them when it passed the Act of June 8, 1872, ch'. 348 (17 Stat. L., 337), providing that the fifth section of the Act of May 8, 1872 (17 Stat. L., 83), should not be held to repeal that part of paragraph 1030 of the Eevised Army Begulations of 1803 with which it appeared to be in conflict, thus recognizing the regulations approved by Congress in that year as having the same force as Congressional enactments.
On the other hand, as not so approved have the force of law only when founded on' the President’s constitutional powers as commander-in-chief of the Army, or are “ consistent with and supplementary to the statutes which have been enacted by Congress in reference to the Army” (Symonds’s Case, 120 U. S. R., 46, affirming 21 C. Cls. R., 151; Reed's Case, 100 U. S. R., 22: Smith v. Whitney, 116 ib., 180; United States v. Whitney, 120 ib., 47; Wayman v. Southard, 10 Wheaton, 43; United States v. Eliason, 16 Peters, 291; United States v. Freeman, 3 Howard, 556; Kurtz v. Moffitt, 115 U. S. R., 503; United States v. Webster, 2 Ware, 66; United States v. Maurice, 2 Brock, 103; Ferren's Case, 3 Benedict, 447; Gates v. Fletcher, 1 Minn., 204; 1 Opins. Attys. Gen., 469, 547; 2 ib., 225; 3 ib., 85; 6 ib., 10, 215, 365; 10 ib., 415; 16 ib., 38).
Whether a regulation, question, is within the constitutional power of the President to promulgate, or whether it has been approved by Congress, -or whether it “ is consistent with and supplementary to the statutes,” are judicial questions not always free from difficulties of determination.
In the light of these views and the adjudicated cases we shall examine the existing regulations.
*460 The present regulations are contained in the edition of 1881, published under authority of the Act of March 1, 1875, ch. 115 (Supplement to Bev. Star., 149), which directs the President “ to make and publish regulations for the government of the Army in accordance with existing laws,” and under the Act of June 23, 1879, ch. 35, sec. 2 (Supplement to Rev. Stat., 494), which further directs the President to “cause all the regulations of the Army and general orders now in force to be codified and published to the Army,” and provides for the expenses of the work.
As promulgated in this edition they contain orders and regulations of four different classes intermingled. At the end of each the earlier authority for it is specified by a note in brackets.
(1) General orders which he (the President) has aright to issue under his constitutional prerogative of “ Commander-in-Ohief of the Army and Navy of the United States ” (Const., art. 2,, sec. 2, par. 1).
(2) Departmental regulations, under Bev. Stat., sec. 161, authorizing the head of each Department to “ prescribe regulations, not inconsistent with law, for the government of his Department, the conduct of officers and clerks, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property appertaining-thereto.”
(3) Begulations not approved by Congress, but made by the President in the exercise of legislative authority conferred by the acts above cited.
(4) Begulations expressly approved by Congress.
As to the regulation involved in the present inquiry, now paragraph 1652 of the edition of 1881, we find that it first appeared in its present form in the edition of 1857, as paragraph 908. It was reproduced as paragraph 1006 in the published Begulations of 1863, which were in whole expressly approved by Congress by the Act of July 28, 1866, ch. 299, sec. 37 (14 Stat. L., 337, 338). It is therefore “a valid and lawful regulation, having the force of law.”
This answers the first inquiry of the Secretary of War,
Secretary submits the case of Paymaster Smith in making payment to Lieutenant Garrow as the one to which he lias special reference. We have found the facts in that case, and it only remains to apply the law.
*461 Lieutenant Carrow, of the Seventh Cavalry, serving at Fort Abraham Lincoln, Dak., availed himself of sick leave of absence, which expired in March, 1879. He never returned to his post, but committed suicide at Saint Louis, Mo., on the 19th of May following.
Major Smith was the proper paymaster in that military department to pay the Seventh Cavalry. Lieutenant Oarrow’s voucher, in duplicate, for his salary of $125 for the month of April, made out in the usual form, in accordance with instructions of the War Department, with his certificate attached that the amounts charged in the account were correct and just, as authorized by law, and that they were rightfully due him as stated, was presented in the regular and usual course of business, and paid in good faith by Paymaster Smith, who had no knowledge that any of the statements of fact therein contained were untrue. The returns from the fort to the Adj utantG-eneral at Washington for March 31 and April 30 reported Lieutenant Carrow as u absent without leave,” but Major Smith had not been notified of that fact and did not know it.
The payment was made on Carro w’s voucher, just as payment was made at the same time on the vouchers of many officers of the same regiment.
In our opinion Paymaster Smith is protected from loss by said paragraph 1606 of the Regulations of 1863, which is as follows:
“ 1006. If any account paid on the certificate of an officer to the facts is afterwards disallowed for error of fact in the certificate, it shall pass to the credit of the disbursing officer, and be charged to the officer who gave the certificate.”
The case comes exactly within the terms of that regulation, and no fault on the part of Paymaster Smith appears to prevent its operation or to deprive him of its benefit.
As to the second question submitted by the Secretary of War, we are of opinion that, independently of paragraph 1006 of the Regulations of 1863, Paymaster Smith is not chargeable with loss in this matter. Departmental orders provided how notice should be given to paymasters of the stoppage of officers’ pay and what action should be taken thereon.
Those orders now appear in the Regulations of 1881, as - follows:
“ 2446. The notice of stoppage of officers’ pay will take the form of a monthly circular to paymasters, advising them of *462 stoppages in force at its date. This circular will be submitted to the Secretary of War for his approval prior to publication. When an officer’s name is borne upon this circular, no payment of salary will be made to him which is not in accordance with the stoppage entry in the case. Paymasters disregarding this requirement in any case will be held liable for the amount of the stoppage.
“ 2447. Overpayments to an officer are to be deducted on first payment after notice after stoppage, even if the pay accounts have been assigned. The assignee takes the account subject to all risks of stoppage. * *! * ”
Those two regulations were not among those in the edition of 1863, approved by Congress, but they had been promulgated before Paymaster Smith paid Lieutenant Oarrow, and were proper departmental regulations, upon which paymasters had a right to rely in the absence of other direct information. They are founded upon the assumption that cases arise where over-payments may be made without fault of a paymaster. They provide how such overpayments shall be recovered back, not by cliargingthem to the officer innocently making the payment, but by deducting them from the pay of the officer receiving the same on the first payment after notice of stoppage.
At the time of the payment by Paymaster Smith in this case it was by no means certain that Lieutenant Oarrow would be subjected to the forfeiture of his pay.
The section of the Revised Statutes under which the forfeiture is claimed is as follows :
“ Section 1265. Officers * * * when absent without • leave, shall forfeit all pay during such absence, unless the absence is excused as unavoidable.”
No action was taken on account of the absence of Lieutenant Oarrow beyond the mere notice of the fact to the Adjutant-General in the monthly returns from the fort where his regiment was stationed.
Had he lived, his absence might have been excused as unavoidable. Had the forfeiture been insisted upon, the overpayment might have been set off against his future compensation under the regulations, or it might have been charged to his personal account and an action thereon maintained against him by the United States (Parker v. United States, 1 Pet., 292). The accidental circumstance of 0arrow’s sudden death before action taken upon his absence is no reason why Paymaster Smith should be charged with the loss.
*463 There may be cases where an officer is prima facie or otherwise liable to stoppage of pay and yet the Secretary of War may not deem it advisable to have the stoppage enforced through notice to paymaster on the monthly circular.
The giving of such notice is a matter wholly within the discretion of the Secretary of War, if appeal be made to him (Billing's Case, 23 C. Cls. R.). Paymasters are not responsible if notice be omitted and they are misled by the action or non-action of superiors, upon whom they have a right, under the regulation, to depend for information and instructions.
It matters not that other paymasters made payments to the • same officers at the same time and for the same period of service claimed. If the regulations of the Army and the instructions of the War Department were such that an officer could thus fraudulently draw his pay three times for the same service, the paymasters who acted in good faith on such authority were without responsibility for the loss. (Hartson’s Case, 21 C. Cls. R., 455.)
The clerk will certify the foregoing findings of fact, conclusions of law, and opinion to the Secretary of War for his guidance and action.