Howry, J.,
delivered tbe opinion of tbe court:
Tbe foundation of tbe claim before tbe court is made to depend entirely upon tbe status of tbe claimant during tbe time hereinafter set forth and tbe supposed obligation of tbe Government to pay him tbe salary attached to bis office and held by him during said time, and in no sense relates to the actual performance of any service or military duty which tbe claimant might have rendered or was excused from rendering by reason of absence according to tbe facts hereinafter set forth.
Tbe record shows that claimant was an officer of tbe Army with tbe rank of second lieutenant in tbe Fourteenth Infantry of tbe regular service of tbe United States. While stationed at tbe post of Fort Leavenworth, Kans., September 12,1891, be applied for and obtained leave of absence from his command with permission to go to St. Louis, Mo., alleging as a reason for tbe proposed leave that be desired to take bis wife to that place, where her brother would meet and take her to Minnesota, where she resided. Tbe leave being granted, tbe claimant took bis departure, but did not return upon tbe expiration of tbe leave. lie remained actually absent without leave from September 15, 1891, to March 15,1892.
Some six weeks after tbe leave had expired, to wit, November 3,1891, information was received by tbe commanding officer at Fort Leavenworth that claimant was in jail at Hannibal, Mo., charged with burglary and grand larceny. An officer was sent from the regiment to Hannibal to obtain the facts and for the purpose of identifying tbe prisoner. This officer found claimant confined in tbe jail in default of bail, and learned that claimant bad reached Hannibal September 13, 1891. While at Hannibal tbe claimant went under the name of Dubois, and tbe day previous to bis arrest be testified there under that name in one of tbe courts. He was accompanied by bis wife while in Hannibal, and represented that be was in tbe secret service of tbe Government, but connected with tbe military in some way on special duty. He was arrested as Dubois, and be and two others were charged with burglary and larceny, and were indicted for those offenses. After the arrest tbe claimant did not notify tbe military authorities of bis whereabouts, but remained in jail until delivered by tbe civil to tbe military authorities, March 15,1892.
*31 Before a general court-martial convened at Fort Leavenworth, March 30, 1892, the claimant was arraigned on charges of conduct prejudicial to good order and military discipline, and presenting, or causing to be presented, a false and fraudulent claim against the United States, and conduct unbecoming an oflicer and a gentleman, all in violation of the Articles of War. The specification to the first of these charges, after reciting the i>ennissiou given to the claimant to leave the post for two days, stated that he remained absent without authority from September 15, 1891, until October 30,1891, “when he was arrested by the civil authorities at Hannibal, Mo., upon a charge of burglary.” To this charge and specification, which was amended by striking out the words “upon a charge of burglary,” the claimant pleaded guilty. Thereupon the court found him guilty on this plea and charge as amended, and on the evidence found him guilty of the second and third charges and the specifications of each, and sentenced the claimant “to be dismissed the service of the United States.” This sentence was approved and made to take effect January 31, 1893, from which time the claimant ceased to be an officer in the United States Army.
- The suit is to recover (1) either pay for the whole period •during which it was withheld, from September 15, 1891, to March 15,1892, at the rate of $1,540 per year (Bev. Stat., secs. 1201, 1262), or (2) pay from October 30,1891, when arrested, to March 15, 1892, when taken to his command. Upon the first theory the claim is for $722.94; upon the last it aggregates $530.44.
The questions presented for determination are whether an officer of the Army can be deprived of his pay for a period of time during which he is in the hands of the civil authorities in arrest on a criminal charge under the circumstances disclosed by the record; and secondly, whether the military court having failed to declare forfeiture of the pay the civil courts can apply the forfeiture now. On behalf of the claimant it is argued that nothing was said about forfeiture of pay in the sentence of the court-martial, and even if it were granted that absence without leave could have the effect of forfeiture of pay without a forfeiture being adjudged and declared by sentence of a court-martial, the fact remains that during the greater portion of the time for which the pay is now claimed the absence of the *32 claimant was due wholly to his arrest and confinement by civil authority on a criminal charge, and was in no sense his voluntary act.
The claimant rests his contention on certain alleged principles of the military law supposed to be applicable to cases like the one under consideration, and insists that under the circumstances set forth it is settled that the pay of an officer can not be withheld. (Winthrop’s Digest of the Opinions of the Judge-Ad vocate-G-eueral, first edition) p. 120, sec. 8; p. 121, sec. 3 and note; p. 362, secs. 3, 4, 6; pp. 304, 365, sec. 9; Opinions of the Attorneys-General, II Opinions, 396; XIII Opinions, 103; XV Opinions, 175; 1 Winthrop on Military Law, 605.)
Several decisions of this court, which are also said to be the basis of the views contended for, are submitted in support of the claim. (Sleigh v. United States, 9 C. Cls. R., 369; Richard v. United States, 10 C. Cls. R., 282; Smith v. United States, 23 C. Cls. R., 452, 462.)
The Army Regulations in force in 1891 required that the expiration of an officer’s leave must find him at his post. (Par. 54, Art. IX, Reg. 1889’.) His post means the place of the performance of his military duties. The general rule is correctly stated, as contended for by counsel, that under the military law the fact that an officer or soldier is under charges, in arrest, can not affect the right to pay according to rank. This, however, is subject to the modification that in so far as the case may be within the application of other rules of military procedure exceptions may be applied. (Winthrop Dig., p. 561, par. 3.) This modified statement of the rule makes an essential difference, and must necessarily affect those cases where penalties are provided by law for absences (as in the case of officers) which can not be excused as unavoidable absences. While proper army regulations, duly approved by competent authority, have the force and effect of law when applied to the persons affected by them, nevertheless such regulations do not control where statutes undertake to do so, and in the broad statement that the pay status of officers withdrawn from duty by arrest by the civil authority can not be thereby affected the statute must still have application in connection with such statement to the conditions existing in connection with the arrest of the officer, where (as in this case) the officer was absent from his command without leave when placed under arrest. By section 1265 of the Revised Statutes it is provided:
*33 u Officers when absent on account of sickness or wounds, or lawfully absent from duty and waiting orders, shall receive full pay; when absent with leave, for other causes, full pay during such absence not exceeding in the aggregate thirty days in one year, and half pay during such absence exceeding thirty days in one year. When absent without leave, they shall forfeit all pay during such absence, unless the absence is excused as unavoidable.”
Unless the claimant has brought himself within the terms of this statute and excused his absence as unavoidable he is not entitled to recover, and this is true whether the sentence of the military court did or did not specifically declare forfeiture of the pay for the'absent period. It nowhere appears that the claimant excused his absence. If he made any effort to do so by the intimatiou that at the time of his arrest he was in the act of negotiating a draft to procure the means to return to his command, the truth of the statement is seriously impaired by the fact that he was in another State from whence he had gone, some distance from his command, and not at the place he proposed to go when requesting the leave. He was accompanied by his wife, representing himself to be in the secret service of the Government, and traveling under different names, but not his own.
When arrested he was absent without leave, and whether guilty or innocent of the charges which led to his detention, it is still true that he created the conditions which caused his continued absence without permission. His personal conduct in absenting himself up to the time of the arrest has nothing of an extenuating nature whatever, and nothing has been said by way of apology or excuse for conduct prejudicial to good order and military discipline involved in an unauthorized absence at a time and place where the claimant voluntarily put himself in the way of further detention on charges which, in the nature of things, had to be met and which operated to continue the unlawful leave, and which, from the proof, we must assume he intended to voluntarily maintain if he had not been arrested and subsequently brought back to his command. Whether the claimant was guilty or innocent of the charges preferred by the civil authorities can not be the subject of inquiry here, nor can the fact that such charges were made enter into the matter under consideration, except to throw light upon the intention of the claimant with respect *34 to bis return at the time when, in violation of the military law by an unauthorized absence, he was arrested at Hannibal.
The theory of pay, without interruption, to soldiers while detained by the civil authorities, proceeds upon the idea that if arrested while in the discharge of military duty or absent by permission the deprivation of pay to the person arrested would be detrimental to the interests of the service and in general contrary to public policy. This case presents no such features as to entitle the claimant to invoke the principle suggested. He was not in the performance of military duty at the time of the arrest nor absent by permission, and it would be more consistent with public policy, aud vastly more beneficial to the ■military service, to say that an officer absent in willful disregard of his obligations, and arrested under these circumstances, must himself be held responsible for all the direct and indirect results of his wrong. The claimant has not shown that his absence beyond the authorized time was unavoidable, but rather that the entire absence was the result of purpose and misconduct combined, without reference to the causes which operated upon the civil authorities to place him in custody.
It did not become necessary to deprive him of pay for the military court to consider the question of the claimant’s right to it during the period of the unlawful absence or to declare forfeiture of that pay by the sentence. Pay ceased for the whole time, unless the absence was excused as unavoidable. In this connection it maybe noted that the claimant appeared upon the record as absent without leave for the whole time of the absence, which included the period of his confinement in jail under the charges preferred by the civil authorities. So late as January, 1894-, we find the claimant requesting that the record in his case be so amended as to read that he was retained in the hands of the civil authorities from October 30, 1891, to March 15,1892. Within a few. days after that date the petition for the recovery of his compensation was filed in this court, and a few days later we find the Secretary of War declining to authorize the removal from the record the statement that claimant was absent without leave from September 15, 1891, to March 15,1892. The pay which became forfeited has the record to sustain the defense of absence without authority for the whole time, from which it would appear that *35 tbe military court did not deem tbe claimant entitled to any consideration for the detention caused by tbe arrest. More emphatically it appears that absence for none of. the time was excused, according to this record.
In tbe case of enlisted men it has been held that for the purpose of determining the right to receive pay and allowances for past services the-fact of desertion need not be established by the findings of a court-martial, it being sufficient to justify a withholding of the moneys that the fact appears upon the muster rolls of a soldier’s company. Where entry of desertion has been improperly made, its cancellation can be obtained by application to the War Department. Forfeiture of pay and allowances for future services as a condition of restoration to duty can only be imposed by a court-martial. (United States v. Landers, 92 U. S. R., 79.) In the case of retained pay the question of honest and faithful service can be tried in a collateral proceeding without forfeiture having been considered and. declared by the military authority. (United States v. Kingsley, 138 U. S. R., 90.) The failure of the military court to include in the sentence forfeiture of pay can not supersede an express statutory enactment requiring the whole absence to be excused as unavoidable. As the proof does not show the unavoidable character of the absence, the forfeiture ensued by operation of law. The statute, it will be observed, is imperative, that when an officer is absent without leave he “shall forfeit all pay during such absence, unless the absence is excused as unavoidable.” It may be questioned whether the absence must be excused as unavoidable by the military authorities, and by them alone, or whether the officer can come into this court and show that it was excusable. As that question was not discussed on the argument, no opinion in regard to it is now expressed.
The judgment of the court is that the petition be dismissed.