Booth, Chief Justice,
delivered the opinion:
The plaintiff, James L. White, applied and was accepted for enlistment in the Marine Corps at Oklahoma City, Oklahoma, on April 13, 1927. His acceptance was duly approved at Kansas City, Missouri, on April 14, 1927, and he was immediately ordered to proceed to Parris Island, South Carolina, which he did, arriving there on April 20, 1927. On June 17, 1927, the plaintiff was surrendered to the sheriff of Washita County, Oklahoma, who held a warrant for his arrest upon a charge of perjury alleged to have been committed on March 11, 1927. The plaintiff was returned to Oklahoma by the sheriff, being informed at the time by the post commander that the county attorney in Oklahoma would furnish him return transportation in the event of his acquittal. Immediately upon his arrival *462 in Oklahoma be was admitted to bail, and on October 9, 1928, following a preliminary bearing, the case against him was dismissed for insufficient evidence and he was set free. The plaintiff at once applied to the local authorities for return transportation to his station and was told to wait. He also applied to the recruiting sergeant at Oklahoma City for return transportation and was again told to wait until his transportation was called for.
On June 8,1929, the sheriff of the county notified him that he would be returned to his station and he was so returned by the sheriff, arriving at Parris Island June 14,1929. During the entire period of his absence he lived with his mother on her farm and assisted her, engaging in no other occupation. The plaintiff did not know when he applied for enlistment that a criminal charge had been preferred against him or that he was suspected of having committed any crime, nor was he aware that a warrant had issued for his arrest. From June 17, 1927, the date of his surrender, to June 14,1929, the date of his return to his station, his pay as an enlisted man was held in abeyance and he did not and has not received the same. This suit is for the recovery of $497.12, the amount concededly due him as pay, if lawfully entitled thereto.
The established regulations of the Marine Corps have for many years provided as follows:
“ Pay of a man in hands of the civil authorities at the close of a month awaiting trial will be checked, and in the event of release without trial, or after trial and acquittal, the pay so checked will be recredited. ”
[Regulations of equal antiquity of both the Army and the Navy, while worded somewhat differently, have uniformly provided in accord with the above regulation and given the right of pay to a soldier charged with a criminal offense when the soldier is acquitted of the charge, authorizing the mere suspension of his pay to await the outcome of criminal proceedings against him. We have been unable to find— certainly no decision of the Comptroller of the Treasury, Comptroller General, this court, or the Supreme Court is cited in the briefs — wherein a soldier coming within the situation set forth in the regulations has been denied his pay.
*463 On May 27, 1896, the then Assistant Comptroller of the Treasury advised the Secretary of the Navy to withhold the pay of a seaman on the flagship Newark, who had been arrested for the crime of murder committed by him while on leave, until the issue of his guilt or innocence was lawfully established. Among other observations, the assistant comptroller said: “ * * * pending a decision, his pay should be held in abeyance, for if acquitted he will be entitled to it, while if convicted, it will be forfeited from the date of his arrest * * *.” 2 Comp. Dec. 584.
On December 22, 1903, Assistant Comptroller Mitchell, in response to a reference of the Secretary of the' Navy, was confronted with the following facts:
A carpenter’s mate while on board the Franklin at Norfolk, Virginia, was delivered to the civil authorities of New York on October 25, 1902, on a charge of burglary. He was not immediately tried, and on July 25, 1903, nine months after his arrest, was granted his freedom on his own recognizance. He immediately notified the proper military authorities of his release and in pursuance of proper orders reported for duty on board the Oolwmbia on August 14, 1903, where he remained awaiting the pleasure of the civil authorities until October 31, 1903, when the bureau instructed the commanding oflicer of the receiving ship Hancock at New York to place the carpenter’s mate on general detail, and inform the civil authorities that he would not be held for them longer, as it was evident that he would not be tried for his alleged offense in the near future. The presiding judge, it is said, declined to try the man in the absence of his wife, said to be an important witness. The assistant comptroller, relying upon various regulations and prior opinions, in substance held that inasmuch as the man might never be called for trial and denied the right to establish his innocence, there being a presumption in favor of innocence until guilt was established, and the attitude of the court clearly indicating a strong probability that he never would be tried for the offense, his pay as carpenter’s mate was not dependent upon the “ will and election of a prosecuting officer ” after so long a lapse of time, and his pay was due him. 10 Comp. Dec. 490.
*464 Without additional citations sustaining uninterrupted regulations as to the right to pay under the facts of this case and repeated decisions of the accounting office with respect thereto, it is established beyond contradiction that beginning as early as 1844 down to the present time the rule has obtained that where an enlisted man has been surrendered by the military to the civil authorities upon proper criminal process, and afterwards found guiltless of the offense charged, his right to pay obtains, and if it has been suspended or held in abeyance he is recredited with the deferred installments.
On February 24, 1928, the Comptroller General, vol. 14, Bureau Memoranda, p. 10354, -in response to an inquiry from the Secretary of the Navy, sustained the right to pay of an enlisted man who while on leave from his vessel was held on a criminal charge and afterwards released by the civil authorities and permitted to return to his ship pending trial for the alleged offense. In this opinion the following is said:
“ It has been uniformly held that a soldier or sailor who is absent from duty without leave is not entitled to pay for the time of such absence and that an unauthorized absence is not excused by the fact of detention in the hands of the civil authorities unless upon trial the prisoner is acquitted. In the present case, however, the question of unauthorized absence does not arise. The enlisted man was on authorized leave and reported back to his station before the expiration thereof. While it is true that for the period of detention by the civil authorities he was withdrawn from control and jurisdiction of the naval authorities and his services were not available in the event that he had been recalled from leave, in which case he would have been absent without leave from the date of recall, he was not in fact so recalled and his status of absence on leave continued from date of departure from his ship to the date of return thereto.
“ If otherwise entitled to pay, you are authorized to credit Boaz with pay during the period of his detention by the civil authorities as above described. His right to pay from the date when delivered to the civil authorities for trial will depend upon whether he is convicted of the crime, acquitted, or admits his guilt and is released on condition that he makes reparation in accordance with present decisions. *465 2 Comp. Dec. 584; 9 id. 281; id. 249; 19 id. 265; A-21593, Feb. 18,1928,1 Comp. Gen. 496.”
The plaintiff was denied his right to pay by the Comptroller General upon the theory that the facts in this case essentially differentiate it from prior cases and precedents in that the plaintiff in this case enlisted with a criminal charge and a warrant for his arrest pending against him at the time of enlistment, whereas the precedents cited disclose that the criminal charge arose subsequent to the soldier’s enlistment. 9 Comp. Dec. 114. At page 118 of the opinion it is said:
“ Where by reason of the environment, circumstances, or situation of the man before his application and acceptance for enlistment, he has come under suspicion of the commission of a crime, however, innocently, and after he has been enlisted he is withdrawn from service, and because of the comity existing between the military services and the civil authorities is delivered to the civil authorities for trial, so far as the Government is concerned there has been a failure of consideration moving to the Government, which must, in equity and good conscience, bar any claim against the Government for the payment of the pay and allowances during the period the agreed services are not rendered, and this without reference to the outcome of the trial by the civil authorities or the release of the man without trial, and also without otherwise necessarily affecting the contract of enlistment.”
The loss of the services of the soldier, in so far as the Army, Navy, or Marine Corps are concerned, during his period of detention by the civil authorities, would, it seems to us, be fraught with precisely the same consequences whether he be detained for an offense alleged to have been committed either before or after his enlistment. In either case he is absent from his station and engaged in no military activities during the time. The failure of consideration moving to the Government would we think be quite as intensive in one case as' in the other, unless it may be found as a fact that the enlisted man was aware of pending criminal charges and thereby knew of his restricted opportunity for service, or sought by enlistment to escape apprehension and trial for a crime committed prior to his enlistment, *466 and even then a guilty man with positive knowledge of misconduct prior to his enlistment may not escape the consequences of his enlistment, rescind the contract which made him a soldier, or escape the penalties provided by military or statutory law for subsequent misconduct as a soldier. In re Grimley, 137 U. S. 147.
An applicant for enlistment, wholly innocent of pending criminal charges against him, when duly enlisted in the service, attains the status of a soldier, and while his advent into the service is in its nature contractual, once in the service the question of the performance or nonperformance of daity duties and service is left to the regulations and disciplinary resources of these in command. If the soldier neglects a duty or shirks a commanded service military laws cover the means for correcting or punishing his conduct. Enlistment, as held a long time ago, “transfers him from civil to military life, and renders him amenable to military jurisdiction.”
Attorney General Alphonso Taft on November 9, 1876, rendered an opinion as to whether the confinement or suspension from duty of officers or men under sentence of a court-martial works, ipso facto, a forfeiture or loss of pay during such confinement or suspension. The opinion states—
“ These questions appear to have been suggested by a ruling of the Second Comptroller of the Treasury in the case of John F. Carr, a landsman in the Navy, to the effect that the latter is not entitled to pay for the period during which he was in confinement under sentence of a court-martial, notwithstanding there was a remission by proper authority of so much of the sentence as imposed forfeiture of pay. The grounds of this decision are explained in a communication of the comptroller to you, dated February 22, 1875, in which he states ‘that, on general principles of law, a man who is rendered incapable through his own misconduct of fulfilling the stipulations of his contract of enlistment can claim nothing under that contract. The Government,’ he adds, ‘ agrees with the enlisted man that for a certain amount of service he shall receive a certain amount of pay. If the man by his misconduct and necessary withdrawal from service does not perform his part of the contract, the Government can not be held to the fulfillment of its part thereof. The remission of a sentence may restore the *467 man to service from the date thereof, but can not replace the service lost while actually in confinement.’
“ The comptroller has, I think, misconceived the true basis of the right to pay in the case mentioned. In the naval as in the military service the right to compensation does not depend upon nor is it controlled by ‘ general principles of law ’; it rests upon and is governed by certain statutory provisions or regulations made in pursuance thereof which specially apply to such service. These fix the pay to which officers and men belonging to the Navy are entitled; and the rule to be deduced therefrom is that both officers and men become entitled to the pay thus fixed so long as they remain in the Navy, whether they actually perform service or not, unless their right thereto is forfeited or lost in some one of the modes prescribed in the provisions or regulations adverted to. (Compare opinion of Attorney General Hoar, 13 Opin. 104.)
“ I discover nothing in the law of the naval service which justifies the view that confinement or suspension from duty under sentence of a court-martial is attended by forfeiture or loss of pay, unless the forfeiture or loss be imposed by the sentence, and I accordingly answer your first question in the negative.” 15 Ops. Atty. Gen. 175, 176.
An issue similar to the instant case has frequently been before this court. See Conrad v. United States, 32 C. Cls. 139; Dodge v. United States, 33 C. Cls. 28; Walsh v. United States, 43 C. Cls. 225; Carrington v. United States, 46 C. Cls. 279.
In this case the plaintiff, a young man twenty-two years of age, wholly innocent of any knowledge of a criminal charge against him, which was subsequently judicially ascertained to be unfounded, enlists in the Marine Corps and performs service until by an established comity between the military and civil authorities he is surrendered to answer for an alleged offense and thereby in accord with established military procedure prevented from performing his daily duties. At no time was a charge of a military nature preferred against him, nothing more done than to suspend his pay to await the result of the criminal charge against him in keeping with established regulations, and no allegation made or proof furnished that he omitted to observe a single regulation or that his conduct in any way transgressed military law, or that by any process of civil or *468 military law he could have escaped detention. Under these circumstances, which he could not prevent and for which he was not responsible, he is denied his pay, to which he is clearly entitled under the regulations. It would, we think, be an anomalous proceeding to permit resort to the courts to ascertain whether, under all the various provisions with respect to pay and allowances of officers and men of the Army, Navy, and Marine Corps, investigations should obtain to determine as a matter of fact whether the soldier involved had by conscientious service earned what the statutes allow him.
The plaintiff is entitled to a judgment for $497.12. It is so ordered.
Whaley, Judge; Williams, Judge; LittletoN, Judge; and GkeeN, Judge, concur.