Nott, Ch. J.,
delivered the opinion of the court:
Prior to the war with Spain it had been the invariable practice of the War Department (as the court understands) to order a regiment of volunteers, whose services were no longer needed at the close of the war, to the place of enrollment, then and there to be mustered out of service. It has *709 also been the invariable policy of Congress to allow to volunteer troops after th.eir discharge one, two, or three months’ extra pay. (Emory’’s ease, 19 C. Cls. R., 254.)
At the close of the war with Spain the War Department instituted an entirely new policy. Instead of ordering volunteer commands home, to be then and there mustered out of the service, they were ordered home, not to be then and there mustered out of the service, but that leaves of absence and furloughs “be granted” to those officers and enlisted men for sixty or thirty days, as further provided. These leaves and furloughs were of course individual, and the order excepted officers and men needed for duty, to whom leaves and furloughs should not “be granted;” but the leaves and furloughs were “all to take effect on one date,” and the officers and men to whom they were granted were required without fail to “report at the rendezvous on the thirtieth or sixtieth day” preparatory to muster out. It is plain that this order was a device of the War Department to give to volunteer soldiers the usual additional pay at the close of their service without waiting- for the action of Congress.
By the Act 12th January, 1899 (30 Stat. L., p. 784), Congress approved or disapproved (as it may appear to different minds) this action of the War Department, and enacted, generally and prospectively, “That in lieu of granting leaves of absence and furloughs to officers and enlisted men belonging to companies and regiments of the United States Volunteers prior to muster out of the service,” they shall hereafter “be paid two months’ extra pay on muster out and discharge from the service.” Subsequently, Congress became aware of the fact that not all of the volunteer officers and men had been granted leave of absence or furlough, and, by the. Act 26th May, 1900 (31 id., 217), enacted that officers and enlisted men who had served faithfully during the war with Spain and had been “honorably discharged without furlough,” should be paid the extra pajr “at the rate of one month to those who did not serve beyond the limits of the United States, and two months to those who served beyond the limits of the United States. ”
This being the condition of the statute law, it remains to be said of the order of the War Department, first, that neither *710 the Secretary of War nor any officer of the Government can force a leave of absence or furlough upon an officer or soldier; second, that the order does not assume to do so, but was the old, well-understood formula that leaves and furloughs “bo granted;” third, that the order does not contemplate that every member of a regiment will be furloughed, but, on the contrary, expressly excepts those whose services may be needed — -“officers and men required for necessary guard details,” etc.
A leave of absence or a furlough is a favor extended. A soldier can not have a furlough forced upon him. So long as he remains in the service he is entitled to rations and a resting place and medical attendance. No officer of the Government can authoritatively say to him, “Be gone for a month or two and take care of jmurself, and fail not to come back at the appointed time to resume jTour duty and get 3rour pay, or you will be arrested as a deserter.” The only manner in which the Government can release itself from its obligations to the soldier, be ho officer or enlisted man, is by setting him free — by discharging him from the service.
For the purposes of this case it is immaterial whether an officer or soldier was on active duty or compulsory duty, or any kind of duty. If he was still in the service of the United States — still 'under the obligations of military law, and has been “honorably discharged”. — the act 26th May, 1900, gives him one month’s extra pay unless he received and accepted a “ furlough.”
It has been suggested that these members of the First Ohio Volunteer Infantiy who were retained on duty in Cincinnati after the return of the regiment in September, 1898, wore retained at the place of their enrollment; and thejr being at their homes, or residences, and the duty trivial or nominal or perfunctory, it was the equivalent of a leave of absence or furlough. But the statute says nothing about homes or residences or equivalents. When a soldier receives a furlough he is for the time being his own master and the master of his own time, and is free to go where he pleases, and do what he pleases, owing no militaiy duty to the Government. It is not unlikely that in September, 1898, a great city was the last place in which these men, just returned from a semitropical *711 climate, desired to be or in which it was desirable they should be.
As for Colonel Hunt, it appears to the court that he did precisely what it was the dxdy of a colonel of a regiment to do— he obeyed the order of the War Department to detail a sufficient guard for the protection of the arms and other public property in possession of his command; he reported to different commanding officers for orders or instructions; he remained in Cincinnati during the whole period of the furlough; he attended daily at the arsenal where the property was stored, and supervised the attendance and discipline of his guard; he did not apply for leave of absence, or receive a leave of absence, or onjoj^ a leave of absence. As to the other members of the regiment who have appeared in this court, they had no voice in the matter. Furloughs were flatly refused to them by ordering them to remain on duty. The bona fides of what was done can not now be questioned. In September, 1898, no law existed granting an additional month’s pay to volunteers, and no man could have anticipated the act 2títh JVffiy, 1900, with the conditions which it imposed. Undoubtedly those members of the regiment detached for guard duty then regarded their assignment to duty while their comrades were enjoying a furlough as one of the unfortunate chances of war. But the whole case can be summed up in a single sentence, which is this: The statute imposes but two conditions upon the right of a soldier to receive the one month’s extra pay which it grants; the first is that ho was “honorably discharged;” the second that he was discharged “without furlough.”
There is an additional cause of action in the case, being for commutation of quarters while the regiment was awaiting muster out in Cincinnati. This is founded on the very broad language of the Acts 18th June, 1878 (20 Stat. L., p. 145, sec. 9), and 83 d June, 1879 (21 id., p. 30), which provide “that at all places where there are no public quarters, commutation therefor may be paid.” But the court is of the opinion that the military condition of the claimant in Cincinnati was that of an officer on duty with his regiment in the field, and that the statutes do not extend to such cases. Commutation fox-quarters existed long before these statutes were passed, and *712 have always been regulated by the Armjr Regulations. The purpose of the statutes was not to change the regulations, for they refer to “such number of rooms as is now allowed to such grade by the rules and regulations of the Army,” and they confine commutation to officers “entitled to the same.”
By regulation 1836 an officer is not entitled to commutation unless he is “ on duty without troops at a station where there are no public quarters,” and “ an officer ordered to his homo to await orders is not entitled to this allowance” (ib., 1341). The plain purpose of the regulation is that commutation of quarters is allowed only where an officer is detailed for “ duty without troops;” and the statutes do not enlarge the regulation, but merely limit the price to be allowed per room to $12 per month, leaving it to the War Department to determine when and under whát conditions commutation should be allowed.
The judgment of the court is that the claimant recover for one month’s pay after his discharge from service, $291.67.