Howet, J.,
delivered the opinion'of the court:
This is one of a class of cases awaiting the decision of the court in the Treasury Department. The questions presented *41 affect many army and navy officers in the service during the late war with Spain, and will continue to affect all officers in the military and naval service in time of war where the officer serving with troops operating against an enemy shall exercise, under assignment in orders issued by competent authority, a command above that pertaining to the grade of such officer, unless the statute which is claimed to confer rights now claimed be in the meantime repealed.
There are three questions to be considered: (1) Whether the claimant shall receive a full month’s extra pay; (2) if so, whether as captain of cavalry, in accordance with his title to the same as stated by the auditor for the court, or as second lieutenant, and (3) whether the claimant shall be charged with what the Auditor for the War Department now considers an overpayment of the difference between the pay of a .second lieutenant and the pay of a captain while. in active service. The findings disclose the facts, about which there has been no essential dispute.
The right to some extra pay has been settled by this court. (Charles B. Hunt v. United States, 38 C. Cls. R., 704; Francis Magurn v. Same, 39 C. Cls. R., 416; Edward D. Legg, 40 C. Cls. R., 115.)
But whether the extra pay shall be that of a second lieutenant or a captain, and whether the captain’s pay already received by the officer is a proper set-off, are questions yet involved, determinable by the claimant’s status as an officer at and before the furlough period. That is, whether the claimant is entitled to captain’s pay under the act of April 26, 1898 (30 Stat. L., 364), which reads as follows:
“ Sec. 7. That in time of war every officer serving with troops operating against an enemy who shall exercise, under assignment in orders issued by competent authority, a command above that pertaining to his grade, shall be entitled to receive the pay and allowances of the grade appropriate to the command so exercised.”
It is contended that the claimant was not assigned to the command of troops in orders issued by competent authority within the meaning of the statute, because the order was not of a kind contemplated by the act and because the order was a nullity, inasmuch as the command would have been *42 exercised without it. It is also contended that the service was not rendered with troops operating against an enemy, and finally, that the command of the troop was not above the command pertaining to the officer's grade.
Treating these propositions in their inverse order, the proposition referring to the command above that pertaining to claimant’s grade comes first. The officer was commissioned second lieutenant, which had no grade by the Army Regulations, but he commanded a company by the order which was the appropriate command for a captain, under the order or without it. This command of the company continued during the illness of the officer. On his return to duty he resumed the functions of company commander. Thus, there was no distinction between claimant’s services before and after the furlough period and during that period when he was ill. In that the claimant exercised a command beyond his grade of lieutenant, the case is not like that of Truitt (38 C. Cls. R., 398), where it was held that an officer engaged in the performance of staff duty ivas not exercising a higher command within the meaning of the act, though his duties were different. The distinction between the two cases and the turning point of this branch of the case now before us is that Congress intended to provide the compensation of the higher grade to an officer performing higher duties, if properly assigned to perform such higher duties. But with an order or without an order its compensation was limited to higher duties.
Was this officer serving with troops operating against an enemy? He was one of the volunteers enlisted for service in the war with Spain. He was in the field for the purposes of the war. He was not marching and countermarching in the actual presence of the enemy. In a sense he was not engaged in a campaign and in a sense he was. The movements of the command to -which he belonged were a part of the scheme to subdue an enemy also in the field. That enemy was certainly on the ivater at that time in force and presumably ready to effect a landing somewhere or to do some damage along the coast in or near some harbor. The command to which the officer belonged was engaged in op *43 erations that must be estimated as a general part of the objects of tbe war. Any rule thafi would restrict the operations of troops against an enemy to distinctly offensive operations, as contradistinguished from defensive operations, would be somewhat difficult of application and certainly productive of results probably never intended by Congress in the passage of this act. Such a rule would exclude those troops in the field on the defensive or engaged in defensive tactics. The broad and, as we think, the proper rule would include every command ready to take the initiative or in position to fight in defense, within the country or out of it, and along the coast or in the interior, if the movements of an enemy should render probable actual combat. These views underlie the decision of this court in Glenn v. United States (37 C. Cls. R., 254), as well as the view of the Attorney-General of the United States (22 Opin., 95) in considering this phase 0f the matter.
The serious question in the' case arises on the contention that this officer was not assigned to the command of troops in orders issued by competent authority within the meaning of the act of 1898.
Army Regulations require all persons in the military service to obey strictly and to execute promptly the lawful orders of their superiors (Art. 1). But when Major Humphreys claimed the pay of a lieutenant-colonel this court decided (the Chief Justice delivering the opinion) that Humphreys did not exercise a command above that pertaining to his grade of major, which was primarily the command of a battalion. The court said that “ these additional duties are neither honors nor burdens placed upon the officer by competent authority; they are the ordinary incidental duties of military official life which go with each officer’s commission. It seems to the court incontrovertible that the words ‘ under assignment in orders issued by competent authority ’ constitute the controlling limitation of the statute, and the limitation implies that the benefits of the statute extend only to cases where such an order is necessary to impose the burden of the higher command upon an officer.” ("38 C. Cls. R., 689.)
*44 There is great force in the reasoning of the court as to an assignment to a higher command being necessary before the officer so assigned can be entitled to claim the pay of the higher rank. In the first place, an order is generally quite unnecessary (though under exceptional circumstances, growing out of prolonged absence, it might be advantageous), and it would seem that Congress did not intend by this act to thus indirectly legislate an increase of compensation except where competent authority should exceptionally provide for it, because of some special reason for the assignment under orders. In the second place, if an order should be withheld in the case of an officer exercising higher command merely by virtue of seniority, such officer would have imposed upon him the duties and responsibilities of the higher command without the corresponding pay of the higher rank, while the officer who happened to be assigned under orders would have higher pay with no more reason. Discriminations of this kind might* and probably would, be of frequent occurrence and unfair to those not specially favored. The order in any case is superfluous except to obtain greater pay.
The writer was not present when the Humphreys case was considered, but now voicing the views of the entire court it appears to us that the decision in that case is reasonable for the particular circumstances which there appear. Major Humphrejrs claimed the pay of a lieutenant-colonel, when in fact there was no difference between the command of a major and the command of a lieutenant-colonel. Both of these officers had charge of battalions. There the lieutenant-colonel took command of the regiment and Major Humph-reys, who was already in command of a battalion, took charge of another battalion which had been commanded by the lieutenant-colonel. The court decided that the major did not in fact exercise a command above that pertaining to his grade of major, which was primarily the command of a battalion.
General Orders, No. 86, July 2, 1898, A. G. O., embodying an opinion by the Attorney-General, declared that to entitle an officer to the j>ay of a grade above that actually held by him the assignment in orders, under the clause cited, must *45 be by the written order of the commanding general in the field or the Secretary of War, and that no pay or allowances' of a higher grade than that actually held by an officer would be paid under this provision, except when a certified copy, in duplicate, of such order, with statement of service, should be filed with the paymaster.
This order from the headquarters of the Army seems to have been modified in a short time (September 27, 1898, 5 Comp. Dec., 360) by a circular in the nature of an amendment which declared that “ to entitle an officer to the pay of a grade above that actually held by him under section 7 of the act of Congress approved April 26, 1898, he must be assigned in orders issued by competent authority to a command appropriate to such higher grade of troops operating against the enemy (Circ. 39, A. G. O., 1898). Thus, the first general order was discredited at headquarters by putting the matter in such shape that it was not necessary for the commanding general or the Secretary of War to approve the assignment in orders. The first order would indicate that some necessity must exist for the assignment, to be determined by the commanding general or the Secretary of War, and is substantially in line with the decision of this court in the Humphreys case (38 C. Cls. R., 689). The last order would indicate that the necessity for an order should not appear, but should be determined at the discretion of any superior officer in the field making the assignment — an entirely different version of the meaning of “ competent authority.”
The Comptroller seems to have thought payments warranted in a large number of cases where the claims were made for higher pay by those who were assigned to perform higher duties by virtue of orders not emanating from headquarters, and there is much force in the ruling of that officer that Com gress intended to attach a substantial meaning to the act by permitting any officer in the field in command to designate another officer to temporarily fill the position of an absent officer which therebj' determines by orders that the absence is of such a character as to justify the assignment with the consequent increase of pay (5 Comp. Dec., 639; 6 ibid., 187; *46 8 ibid., 470; 8 ibid., 753, 837; 9 ibid., 527; Mss. Dec., 139; Dig. Comp. Dec., -). Thus, we have a responsible law and accounting officer of the Treasury sanctioning the final views emanating from the Headquarters of the Army, in conflict with the first view of the War Office, and contrary to the vieAV of this court.
While the construction given to a statute by those charged with its execution is always entitled to the most respectful consideration, and ought not to be overruled without cogent reasons (United States v. Moore, 95 U. S. R., 763), the double departmental construction given by the War Department greatly diminishes the force of either. Especially in the matter at bar does the last construction given in the War Office not appeal to us, because the first construction given from the Headquarters of the Army as to what constituted competent authority was founded upon an early opinion of the Attorney-General.
The effect of the statement of the court respecting the limitation of the statute has been to suspend all payments by the Treasury to both army and navy officers in any grade who exercised command appropriate to a higher grade under assignment in orders by competent authority (as construed by the, last order from army headquarters) if they might have exercised the same command by virtue of seniority without orders. Accordingly, contemporary construction has been reversed, and confusion has been the result.
The court is of opinion that any construction which permits the pay of two or three generals or a dozen colonels or a hundred captains, as the case may be, to be duplicated as temporary absences occur without some necessity for orders in assignment, is liable to produce abuses never contemplated by the lawmakers. Gratuitous assignments could never serve .any purpose except to increase the pay.
But speculations upon consequences no less than the primary view taken at army headquarters and the subsequent change of front there settle nothing. Some scope should undoubtedly be given for the operation of the act different from the practice, which. before the enactment, devolved higher command by virtue of seniority. The ambiguity in *47 the language leaves room for construction as to when and by whom orders shall be given carrying the increase of pay. Some authority, competent it must be, by the law was authorized to make a valid order carrying the increase. Can the court, any more than the accounting officers, as set forth in Glenn’s case, supra, go behind any order of assignment to higher command and question the wisdom, expediency, or necessity of assigning an officer to the charge of something above that pertaining to his grade, except to inquire whether the order of assignment has been, carried into effect according to law, and to ascertain the extent of an officer’s service? Can the court pass upon the competency of the authority issuing the orders, as between the commanding general, subject to the approval of the Secretary of War, and any other officer directing the movement of troops and making the order? These are questions open to grave doubt. It is, as said by Weldon, J., in Glenn’s case (in passing upon the power of the accounting officers), a most difficult question of administrative law.
As the language of the act is uncertain as to who may make an order and when it may be made, but clear enough that some competent authority may do so without in terms defining the time, and as the claimant (with others of his class) is now denied pay, without the right of appeal because of the limited amount involved; and as the defendants may exercise the right of appeal irrespective of the amount, we have decided to resolve the doubt in favor of the claim, with the expectation that whatever question there be in the case .will find final construction, on an appeal to the Supreme Court. It is of vital importance that the administrative branch of the Government have a decisive judicial construction in settlement of a much-vexed question.
Judgment will therefore be rendered for the claimant in the sum of $166.66.