Peelle, J.,
delivered the opinion of the court:
The claimant, a captain in the Regular Army, seeks to j ecover under section 10 of the act of April 22,1898 (30 Stat. L., 362), and section 7, act of April 26,1898 (30 Stat. L., 365), the pay of a major while on staff duty as assistant adjutant-general during the war rvith Spain, less the pay received by him as captain.
*402 By direction of the Secretary of War, Major-General Miles, May 18, 1S98, issued Special Order No. 116, set out in the findings, directing the claimant (with others) to report to General Shatter, U. S. Volunteers, at Tampa, Fla., for assignment to duty under section 10, act of April 22, 1898, supra. .
Pursuant to that order, General Shatter, on May 26, 1898, issued an order, among other things, assigning the claimant to duty as adjutant-general, First Division, Seventh Army Corps, in which capacity the claimant served until June 4, 1898, when he was relieved and ordered to report to Brigadier-General Snyder, U. S. Volunteers, for duty as adjutant-general.
Pursuant to that order, the claimant reported to General Snyder, who, under date of June 12, 1898, issued an order assuming command of the Second Division, Fourth Army-Corps, and announced in said order the claimant herein as assistant adjutant-general of said division, in which capacity the claimant served until September 18, 1898, when he was relieved.
Section 10, act of April 22, 1898 (supra) so far as material to the present case, provides:
“ * * * The staff officers herein authorized for the corps, division, and brigade commanders may be appointed by the President, by and with the advice and consent of the Senate, as officers of the Volunteer Army, or may be assigned by him, in his discretion, from the1’ officers of the Regular Army or the Volunteer Army, or of the militia in the service of the United States.”
That statute was amended by the act of May 28, 1898 (30 Stat. L., 428), making officers of the Regular Army eligible for such staff appointments, and provided that their acceptance of such appointments should not be held to vacate their offices in the Regular Army, limiting them, however, to “the pay and allowances of their staff rank.”
The claimant was an officer in the Regular Army and therefore eligible under the amending act to appointment, and under the original act to assignment, by the President to such staff duty.
The claimant’s contention is that his assignment to duty was the act of the President, and that he thereby became entitled *403 to the staff rank of major, together with the pa}' and allowances attached thereto by law.
He further contends that he is entitled to recover under section 7 of the act of April 26, 1898 {supra) providing—
“That in time of war every officer serving with troops operating against an enemy who shall exercise, under assignment in orders issued by competent authority, a command above that pertaining to his grade, shall be entitled to receive the pay and allowances of the grade appropriate to the command so exercised.” * * *
We will first notice the legal effect of the assignment of the claimant to staff duty. That is to say, was he assigned to duty by the President “ in his discretion, from the officers of the Regular Army,” within the meaning of section 10 of the act of April 22, 1898 (supra) V
There can be no question but that the President may legally' act through the head of a department. It may be said in general that while the superintendence of the administration devolves upon the President, he can not be required to become the head of every department for the performance of ministerial acts under his own hand, and such ivas the effect of the ruling in the case of Williams v. The United States (1 How., 290).
That case followed the case of United States v. Eliason (16 Pet., 291, 302), where it was held, in respect of the rules for the regulation of the Army, that “ the Secretary of War is the regular constitutional organ of the President for the administration of the military establishment of the nation; the rules and orders publicly promulgated through him must be received as the acts of the Executive, and as such be binding upon all within the sphere of his legal and constitutional authority;” and, further, that “such regulations can not be questioned or defied because they may be unwise or mistaken.”
Later, in the case of Runkle v. United States (122 U. S., 543, 557), in respect of the right of the President to act through the Secretaiy of War in the approval of the proceédings and sentence of a court-martial, dismissing an officer from the United States Army, it was said:
“There can be no doubt that the President, in the exercise of his executive power under the Constitution, majr act through *404 the head of the appropriate executive department. The heads of departments are his authorized assistants in the performance of his executive duties, and their official acts, promulgated in the regular course of business, are presumptively his acts. That has-been many times decided by this court. (Wilcox v. Jackson, 13 Pet., 498, 513; United Statesv. Eliason, 16 Pet., 291, 302; Confiscation cases, 20 Wall., 92, 109; United States v. Farden, 99 U. S., 10, 19; Wolsey v. Chapman, 101 U. S., 755, 769.)”
In that case it will be noted there was not sufficient evidence before the court that the proceedings and sentence of the court-martial had been approved by the President, and for that reason the court held that the officer had not been legally dismissed from the service.
In the later case of United States v. Fletcher (148 U. S., 84, 88), involving the like question as in the Runkle case, the record of the proceedings, findings, and sentence.of the court-martial were indorsed by the Secretary of War in these words:
‘’In conformity with the sixty-fifth of the Rules and Articles of War, the proceedings of the general court-martial in the foregoing case have been forwarded to the Secretary of War for the action of the President. The proceedings, findings, and sentence are approved, and the sentence will be duly executed.”
The question there was as to whether the order was void because it did not appear that the President had personally approved the proceedings and directed the execution of the sentence: but the court held that, as under Revised Statutes, section 216, the Secretary of War ivas required to perform and execute such duties pertaining to the land forces as “shall be enjoined on, or intrusted to him by the President,” that the approval in the manner indicated was presumptively the act of the President. For that reason the act of the Secretary of War was held to bo a sufficient authentication of the judgment of the President.
Wo have thus referred to these cases to show the extent of the President’s power to act through the head of a department, and in every instance — and we are aware of no authority to the contrary — it will be noted the power of the President to thus act was by the head of the department and not by :1 subordinate.
*405 Tbe order assigning the claimant to staff duty was issued by Major-General Miles by direction of the Secretary of War, and even if we were to assume that' the President could have acted in the premises through General Miles, there is nothing in the order or in the record before the court to show that the President directed the issuance of the order. The order, on its face, purports to have been issued by direction, not of the President, but by the Secretary of War. So there is nothing to show that the President exercised his discretion in the assignment of the claimant to staff duty.
To fix liability upon the Government for additional pay to officers for the performance of staff duty under the act, it is essential that the President appoint them by and with the advice and consent of the Senate, or assign them thereto ‘£ in his discretion.” The authority for making such assignment is conferred upon the President, and no one but him or the Secretary of War, acting for him as his constitutional organ, can fulfill the requirements of the act; nor can the Secretary of War delegate to a subordinate the authority to act for the President in making such assignments so as to fix liability upon the Government; nor can such act be recognized as tbe act of the President by reason of the order reciting that the claimant was assigned to duty under section 10 of the act in question.
Of course the assignment of officers to duty rests with the Secretary of War or the commanding generals, independent of the act in question, but such assignments do not carry rntli them additional pay unless so provided for by statüte...
This was the ruling of the Secretary of War August Iff; 1898, as announced bj1- him in Circular No. 39, Headquarieis of the Army, Adjutant-General’s Office, September "27,1898, in which, in referring to staff officers for corps, divisions,'and brigade commander’s, he says:
“No officers having been assigned by the President as staff officers for the corps, division, and brigade commanders, officers who are, or have been, serving in such positions are entitled to receive only the pay of the grade to which they have been commissioned, respectively.”
Hence the claimant does not bring himself within the provisions of the statute, and he is not entitled to recover thereunder.
*406 The further contention of the claimant is that he is entitled to recover because of the exercise by him, as he contends, of a command above that pertaining to his grade, as provided by-section 7 of act of April 26, 1898, supra, providing that—
“ In time of war every officer serving with troops operating against an enemy who shall exercise, under assignment in orders issued by competent authorhy, a command above that pertaining to his grade shall be entitled to receive the pay and allowances of the grade appropriate to the command so exercised. * * * ”
If the claimant did in fact exercise, “under assignment in orders issued by competent authority, a command above that pertaining to his grade,” then he is entitled to recover; otherwise, not.
• Assuming that the claimant was assigned to dut_y under orders issued by competent authority, did he exercise under such “assignment in orders” a command, i. e., “.troops operating against an enemy,” within the meaning of the statute quoted?
A similar question to this arose in the case of Parker v. The United, States (1 Pet., 293-297), where the question was as to an additional allowance bjr way of double rations under an act of Congress and the regulations of the War Department issued in pursuance thereof directing “ additional allowance to be made to generals commanding divisions and to officers commanding military departments.” The contention there was that—
“According to the general usage of the Army the department of adjutant and inspector-general was a military department, and that whilst exercising that office he was commandant of a military department, and as such subject to the additional expense of an independant command.”
But as the record in that case contained no evidence that the adjutant and inspector-general was ever ordered to an independent or separate command, the court held that—
“In the discharge of his ordinary duties he has no distinct command; his duties consist in details of service and" not in active military command.”
That case seems decisive of the present case. The record does not show that the claimant was ever ordered or assigned *407 to the command of troops operating against an enemy; nor is there any contention that he was so assigned otherwise than by his assignment to staff duty.
As assistant adjutant-general of the divisions to which he was assigned, as stated in the case of Parker v. United Stated (supra), “his duties consist in details of service and not in active military command.” Such, also, was the decision of the Secretary of War, as set forth in Circular No. 39 before referred to, where, among other things, he says:
“To entitle an officer to the pay of a grade above that actually held by him under section 7 of the act of April 26, 1898, he must be assigned, in orders issued by competent authorit3r, to a command, appropriate to such higher grade of troops operating against an enemy.”
The evident purpose of the act was to compensate officers “ serving with troops operating against an enemy ” for the greater risk and responsibility attending the command which they may have exercised above that pertaining to their grade.
The claimant was not “serving with troops operating against an enemy ” in the sense of exercising a command over such troops, and therefore he is not entitled to recover.
For the reasons given the claimant’s petition is dismissed.