Whitaker, Judge,
delivered the opinion of the court:
This suit is before us on demurrer.
On April 23, 1942, plaintiff was a major in the Reserve Corps of the Army on active duty. On that day he received a telegram relieving him from active duty, and thereafter, on April 28, 1942, lie received a letter from the Adjutant General of the Army honorably discharging him from his commission. He sues for two months’ pay.
In his petition plaintiff alleges that his record as a reserve officer was good and that his discharge was a result of persecution by his superior officer, Col. Grant Layng. This officer, in accordance with “Tentative Army Regulations No. 605-230” relieved plaintiff from duty with his regiment and recommended that he be reclassified. This recommendation went through channels to Lieutenant General Krueger, the Commanding General of the Third Army at San Antonio, *556 Texas, who convened a board of officers to consider the recommendation. This board consisted of Brig. Gen. George H. Paine, Col. Alfred L. P. Sands, Col. Stanley F. Coar, Col. John Perkins, Lt. Col. Brooks C. Grant, and Maj. Boy B. Priest, the latter of whom was the recorder of the Board but had no vote.
This Board gave plaintiff due notice of the time and place it would meet to consider the recommendation, it gave him a list of the witnesses to be called, and notified him that the recorder would endeavor to obtain the attendance of any witnesses he desired.' '
Assuming the validity of the Army Begulations above referred to, the Board was lawfully convened, its proceedings were regular, and apparently the consideration given the matter was fair and impartial. The only complaint plaintiff makes of the proceedings is that opening and closing arguments were not permitted. This is without merit.
The Board found that plaintiff “does not possess the very high standard of leadership essential to command of troops,” and recommended that “he be reassigned to duty involving administrative matters such as settlement of rents and claims, in which line he has demonstrated ability, or personnel classification, in which he has experience.”
When the Board’s recommendation reached the Adjutant General of the Army he did not reassign him but discharged him “by direction of the President.” Authority for this action is found in section 11 of the Army Begulations referred to. This section reads:
11. Action by convening and higher authority. — a. The recommendation of a reclassification board becomes effective upon approval thereof by the convening authority, except that, in those cases in which the board recommends discharge, demotion, or removal from the active list of the Begular Army, and the convening authority approves or disapproves such recommendation, the complete record will be forwarded to The Adjutant General for final action. However, higher authority is not bound to follow the recommendation of the board and may take such action as the circumstances of each case may require irrespective of the recommendation, provided such action is within the provisions of these regulations.
*557 Whether or not the initiation of the proceedings was inspired by Colonel Layng’s dislike of plaintiff, it appears from the allegations of the petition that he has had a fair hearing and there is nothing to show that the recommendation of the Boárd and the final action taken was dictated by any motive other than the good of the military service.
But, plaintiff says the Army Regulations were invalid because promulgated by the Chief of Staff, “by order of the Secretary of War.” He says under the Constitution only Congress has power “to make rules for the government and regulation of the land and naval forces.”
There is no merit in this contention. One hundred years ago the Supreme Court said in United States v. Eliason, 16 Peters (U. S.) 295, 301:
* * * The poAver of the executive to establish rules and regulations for the government of the army, is undoubted. The very appeal made by the defendant to the 14th section of the 67th article of the Army Regulations, is a recognition of this right. The power to establish implies, necessarily, the power to modify or repeal, or to create anew.
The secretary of war is the regular constitutional organ of the President for the administration of the military establishment of the nation; and rules and orders publicly promulged through him must be received as the acts of the executive, and, as such, be binding upon all within the sphere of his legal and constitutional authority.
Later in 1880, in Blake v. United States, 103 U. S. 227, 231, 232, the court said:
From the organization of the government, under the present Constitution, to the commencement of tho recent war for the suppression of the rebellion, the power of the President, in the absence of statutory regulations, to dismiss from the service an officer of the army or navy, ms not questioned in any adjudged case, or by any department of the government. *****
During the administration of President Tyler, the question was propounded by the Secretary of the Navy to Attorney General Legare, whether the President could strike an officer from the rolls, without a trial by a court martial, after a decision in that offi *558 cer’s favor by a court of inquiry ordered for the investigation of his conduct. His response was: “Whatever I might have thought of the power of removal from office, if the subject were res integra, it is now too late to dispute the settled construction of 1789. It is according to that construction, from the very nature of executive power, absolute in the President, subject only to his responsibility to the country (his constituents) for a breach of such a vast ana solemn trust. 3 Story, Com. Const. 39'7, sect. 1538. It is obvious that if necessity is a sufficient ground for such a concession in regard to officers in the civil service, the argument applies a rrmlto fortiori to the military and naval departments. * * * I have no doubt, therefore, that the President had the constitutional power to do what he did, and that the officer in question is not in the service of the United States.” The same views were expressed by subsequent attorneys general. 4 Opin. 1; 6 id. 4; 8 id. 233; 12 id. 424; 15 id. 421.
In Du Barry's Case (4 id. 612) Attorney General Clifford said that the attempt to limit the exercise of the power of removal to the executive officers in the civil service found no support in the language of the Constitution nor in any judicial decision; and that there was no foundation in the Constitution for any distinction in this regard between civil and military officers.
In 1904 Justice Van Devanter, then Circuit Judge, in In re Brodie, 128 Fed. 665, 668, quoting the above language from United States v. Eliason, supra, said further:
* * * Subject to the Constitution and to the laws of Congress, the President, as commander in chief, is authorized to establish and enforce such rules and regulations for the government of the army as he may deem essential to the maintenance of a high standard of efficiency, discipline, and honor, and, as a means to this end, may properly provide for the trial of accusations against persons in the military service, and for the punishment of offenses by them." * * * Nor is it necessary for the Secretary of War in promulgating such rules or orders to state that they emanate from the President, for the presumption is that the secretary is acting with the President’s approbation and under his direction. Parker v. United States, 1 Pet. 293, 297, 7 L. Ed. 150; Wilcox v. Jack *559 son, 13 Pet. 498, 512, 10 L. Ed. 264; Williams v. United States, 1 How. 290, 11 L. Ed. 135; United States v. Freeman, 3 How. 556, 566, 11 L. Ed. 724; Confiscation Gases, 20 Wall. 92, 109, 22 L. Ed. 320; United States v. Farden, 99 U. S. 10, 19, 25 L. Ed. 267; Wolsey v. Chapman, 101 U. S. 755, 769, 25 L. Ed. 915; United States v. Fletcher, 148 U. S. 84, 89, 13 Sup. Ct. 552, 37 L. Ed. 378; 7 Op. Attys. Gen. 453.
Lastly, Chief Justice Groner in 1940 in the case of Davis v. Woodring, 111 F. (2d) 523, on the authority of the Secretary of War to issue regulations, quoted with approval the foregoing quotation from United States v. Eliason, supra.
Such is, and must be, the rule today. The President under the Constitution is the commander in chief of the Army and Navy, and the Secretary of War is his authorized subordinate responsible for the government and discipline of the Army. Of necessity they have the power to discharge these constitutional functions. In order to discharge his duty as commander in chief of the Army and Navy the President necessarily has power to make rules to determine an officer’s fitness to perform the duties of his office. This is the purpose of the Army Kegulations providing for reclassification boards. These boards investigate an officer’s fitness and recommend what shall be done with him. Surely the President as commander in chief has authority to establish such boards for his guidance and advice. They are not boards for the trial and sentence of offenders. At least they did not so function in this case. No charges of misconduct were preferred against plaintiff; his fitness to be an officer was questioned; this was all. It may be true that only Congress can provide for the trial of military offenders, but certainly the President can provide for an investigation into the fitness of an officer.
His plenary power to make rules and regulations for the government of the Army was never questioned by Congress until the days of Beconstruction when Congress passed the Act of July 15, 1870, c. 294, 16 Stat. 315, 319, section 20 of which provides:
Seo. 20. And be it further enacted, That the Secretary of War shall prepare a system of general regulations for the administration of the affairs of the *560 army, which, when approved by Congress, shall be in force and obeyed until altered or revoked by the same authority; and said regulations skall be reported to Congress at its next session: Provided,.Thak said regulations shall not be inconsistent with the laws of the .United States.
But this provision was repealed by the Act of March 1, 1875, c. 115, 18 Stat. 337, and that Act further provided, “and the President is hereby authorized, under said section, to make and publish regulations for the government of the Army in accordance with existing laws.” When the laws of the United States were codified on June 30, 1926, these Acts were incorporated in the Code (sec. 16, title 10, U. S. C.) in the following language:
16. Regulations for government of Army. — The President is authorized to make and publish regulations for the government of the army in accordance with existing laws, which shall be in force and obeyed until altered or revoked by the same authority: Provided', That said regulations shall not be inconsistent with the laws of the United States.
Thus, if Congressional authority were necessary to enable the President to promulgate the questioned regulations this power has been expressly granted by the Act of March 1, 1875, sufra.
The authority of the Secretary of War to do so on behalf of the President cannot be doubted. See the authorities above cited and also Myers v. United States, 272 U. S. 52, 117, and In re Smith, 23 C. Cls. 452, 458. Rankle v. United States, 122 U. S. 543, 557, upon which plaintiff relies, says:
There can be no doubt that the President,_ in the exercise of his executive power under the Constitution, may act through the head of the appropriate executive department. The heads of departments are his authorized assistants in the performance of his executive duties, and their official acts, promulgated in the regular course of business, are presumptively his acts. That has been many times decided by this court. Wilcox v. Jackson, 13 Pet. 498, 513; United States v. Eliason, 16 Pet. 291, 302; Confiscation Cases, 20 Wall. 92, 109; United States v. Farden, 99 U. S. 10, 19; Wolsey v. Chapman, 101 U. S. 755, 769.
*561 Plaintiff relies on this case because it was there held that the President could not delegate to the Secretary of War power to review the sentence of a court martial dismissing an officer, in view of the 85th Article of War which provided that “no sentence of a court martial * * * extending to the loss of life, or the dismission of a commissioned officer, * * * shall be carried into execution until after the whole proceedings shall have been transmitted to the Secretary of War, to be laid before the President of the United States for his confirmation or disapproval, and orders in the case.”
That case has no application here. Charges were not preferred against plaintiff, and he was not sentenced; only his fitness was questioned. When investigation showed him to be unfit, the Secretary of War discharged him, “by direction .of the President,” but his discharge was honorable.
The President, independent of the Board proceedings, had inherent power to discharge him, Blake v. United States, supra; Myers v. United States, supra; but if he had not h'ad such power, it was expressly granted by section 37 of the Act of June 15,1933, c. 87, 48 Stat. 154. In that section it is said,
* * * Any officer of the Officers’ Reserve Corps may be discharged at any time in the discretion of the President.
Nor can it be questioned that the act of the Secretary of War was the act of the President. The letter of discharge signed by the Adjutant General “by order of the Secretary of War” recited, “* * * you are, by direction of the President, honorably discharged * * *.” This was the form of action taken in Myers v. United States, supra. In that case Myers, a postmaster, was dismissed by the Postmaster General by telegram reading in part, “* * * ' order has been issued by direction of the President removing you from office of postmaster * * (See Finding II, 58 C. Cls. 200.) It was the identical form of action taken in Reaves v. Ainsworth, 219 U. S. 296, 303. In neither case did the Supreme Court expressly approve it, but it was approved by the Court of Appeals of the District of Columbia in Weeks v. United States ex rel Creary, 277 Fed. 594, and *562 on appeal by the Supreme Court reported in 259 U. S. 336, and in United States ex rel. French v. Weeks, 259 U. S. 326. In tbat case general authority had been conferred on the Secretary of War by the President to carry out the provisions of the statute relative to the classification and discharge of officers. How authority was conferred on the Secretary of War in this case is not alleged, but that it was authorized we do not doubt. The statement in the letter that he was discharged “by direction of the President” certainly is presumptively correct. Runkle v. United States, supra.
His discharge being an administrative matter, the President had power to delegate authority to the Secretary of War to discharge him. United States ex rel. French v. Weeks, 259 U. S. 326, 334.
Defendant’s demurrer is sustained and plaintiff’s petition is dismissed. It is so ordered.
MaddeN, Judge; LittletoN, Judge; and Whaley, Chief Justice, concur.
Jones, Judge, took no part in the decision of this case.