James G. LAW, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 91–1478C.

United States Claims Court.

June 30, 1992.

Eugene R. Fidell, Washington, D.C., for plaintiff.

Kirk T. Manhardt, with whom were Asst. Atty. Gen. Stuart M. Gerson, David M. Cohen, Director, and James M. Kinsella, Asst. Director, Washington, D.C., for defendant. Dale C. Andrews and Alexander J. Millard, Dept. of Transp., and Lieutenant Commander Thomas Cahill, U.S. Coast Guard, of counsel.

## OPINION

ANDEWELT, Judge.

In this military pay action, plaintiff, Lieutenant James G. Law, United States Coast Guard (Coast Guard), in effect seeks an order from this court either declaring that plaintiff was promoted to the rank of lieutenant commander on June 1, 1990, by operation of law, or, in the alternative, directing defendant to grant plaintiff a retroactive promotion to that rank as of that date. Plaintiff also seeks other related relief including attendant backpay, *i.e.*, the difference between the pay of a lieutenant and the pay of a lieutenant commander. This action is presently before the court on defendant's motion to dismiss for lack of jurisdiction (RUSCC 12(b)(1)) or for failure to state a claim (RUSCC 12(b)(4)). During oral argument, the court informed the parties that it would consider defendant's motion to dismiss as a motion for summary judgment (RUSCC 56). For the reasons set forth below, that motion is granted.

### I.

The material facts are not in dispute. Appointments to the rank of lieutenant commander in the Coast Guard are made by the President, with the advice and consent of the Senate. 14 U.S.C. § 271(e). Herein, a Coast Guard selection board recommended plaintiff, along with a group of other candidates, for promotion to the rank of lieutenant commander, and these recommended candidates were placed on a list of selectees. On October 4, 1988, the Secretary of Transportation (the Secretary), signing "For the President," approved the selection board's promotion recommendation and stated:

Pursuant to the authority of Section 271, Title 14, U.S.Code, and subject to the advice and consent of the Senate, the President appoints to the grade of lieutenant commander, effective on the date of Senate confirmation, or the date vacancies occur, whichever is later, the officers of the Coast Guard recommended for promotion in the report of the selection board approved this date.

On January 3, 1989, the President nominated all 132 officers on the list of selectees, including plaintiff, for promotion to the rank of lieutenant commander. Subsequently, the Senate confirmed the promotion of all 132 officers, including plaintiff. However, at that time, there were insufficient vacancies for all 132 nominees to receive immediately their promotions. As set forth in 14 U.S.C. § 271(b), as vacancies become available, "[o]fficers shall be promoted in the order that their names appear on the list of selectees." Plaintiff's name appeared 107th on the selection list of 132. There was no vacancy available for the 107th person until June 1, 1990.

Section 271(f) permits the Secretary to delay the promotion of a Coast Guard officer and Section 272(a) authorizes the President to remove an officer's name from a promotion list. Section 271(f) provides, in pertinent part: "The promotion of an officer who is under investigation or against whom proceedings of a court-martial or a board of officers are pending may be delayed without prejudice by the Secretary until completion of the investigation or proceedings." Section 272(a) provides: "The President may remove the name of any officer from a list of selectees established under Section 271 of this title."

In a May 2, 1990, memorandum, the Commandant of the Coast Guard informed plaintiff that the Chief of Personnel and Training had directed that plaintiff's promotion be withheld pending a decision by a board of officers as to whether the President should remove plaintiff from the promotion list. The Chief based his decision on information contained in a special Officer Evaluation Report (OER) covering the period from August 7, 1989, to February 27, 1990. This information was the product of an inquiry conducted at the behest of

plaintiff's superior officer. Plaintiff's OER, signed by plaintiff's Commanding Officer, reported numerous allegations of "crude" and improper behavior which, *inter alia*, led to a lack of respect for plaintiff among his subordinates. Some, but not all, of the allegations related to harassment of female workers and discrimination based on sex. Plaintiff's Commanding Officer concluded that plaintiff was "unsuitable for independent duty" and "should only be considered for assignments where he is under direct supervision."

Pursuant to the May 2, 1990, memorandum, a special board of three Coast Guard captains (the Special Board) convened to consider plaintiff's promotion. The special board first met on June 11, 1990, after the date on which plaintiff's promotion originally would have been effective. During the pendency of the Special Board's deliberations, plaintiff sought relief from the Coast Guard Personnel Records Review Board (the Review Board). Plaintiff asked the Review Board to strike from plaintiff's record the inquiry report and the special OER, and to cancel the proceedings of the Special Board. The Review Board denied plaintiff's request and upheld the propriety of the inquiry and the special OER and stated that it lacked the power to dissolve the Special Board.

The Special Board ultimately recommended that plaintiff be removed from the promotion list, and in March 1991, the Secretary, acting "For the President," informed the Commandant of the Coast Guard that plaintiff's name was removed from the promotion list. Plaintiff sought relief from the Department of Transportation Board for Correction of Military Records (BCMR). The BCMR found that the actions of the Coast Guard, including the actions of the Commandant, the Special Board, the Review Board, and the Secretary, were proper, and denied any relief. Thereafter, plaintiff filed the instant action.

## II.

The selection of officers within the uniformed services, including the Coast Guard, is generally left to the discretion of the President. *See Orloff v. Willoughby,* 345 U.S. 83, 90, 93–94, 73 S.Ct. 534, 538, 539–40, 97 L.Ed. 842 (1953). As set forth in 14 U.S.C. § 271(a), presidential approval is required before an officer may be placed on a list of selectees for promotion. The President's discretion in this regard is not limited in any way. Section 271(e) provides that appointments of regular officers "shall be made by the President" and the sole limitation on that appointment power is that the "advice and consent" of the Senate is required for all officer promotions other than to the grade of lieutenant. Section 272(a) grants the President the discretion, without any limitation, to remove the name of an officer from a list of selectees.

In *Voge v. United States,* 844 F.2d 776, 779 (Fed.Cir.), *cert. denied,* 488 U.S. 941, 109 S.Ct. 365, 102 L.Ed.2d 355 (1988), the Court of Appeals for the Federal Circuit stressed that "[j]udicial deference must be 'at its apogee' in matters pertaining to the military and national defense." With respect specifically to promotions, the court stated:

As we have noted, strong policy reasons compel courts "to allow the widest possible latitude to the armed forces in their administration of personnel matters." *Sanders v. United States,* 594 F.2d 804, 813, 219 Ct.Cl. 285 (1979); *see also Orloff,* 345 U.S. at 94, 73 S.Ct. at 540. Accordingly, absent a statute or regulation entitling a service member to a promotion as a matter of law, the Claims Court has no authority to entertain this claim [for a retroactive promotion]. *Ewanus v. United States,* 225 Ct.Cl. 598 (1980); *Curry v. United States,* 609 F.2d 980, 983, 221 Ct.Cl. 741 (1979).

844 F.2d at 782. The Federal Circuit's position in this regard follows the approach earlier enunciated by the Court of Claims to the effect that courts will interfere with agency discretion in the promotion area only where an individual demonstrates a clearcut legal entitlement to the pay of a higher grade. In *Doggett v. United*

*States*, 207 Ct.Cl. 478 (1975), the Court of Claims described that precedent as follows:

> We have repeatedly refused to interject ourselves into the discretionary military promotion process even if legal error was in some respect committed as to the complaining serviceman. *Abruzzo v. United States*, 206 Ct.Cl. 731, 513 F.2d 608 (1975); *Yee v. United States*, 206 Ct.Cl. 388, 512 F.2d 1383 (1975); *Cooper v. United States*, 203 Ct.Cl. 300 (1973); *Clinton v. United States*, 191 Ct.Cl. 604, 423 F.2d 1367 (1970). While normally we will not award a person pay above the pay of the position he actually occupies we do so if he shows a clearcut legal entitlement to the pay of a higher grade. *Selman v. United States*, 204 Ct.Cl. 675, 684, 498 F.2d 1354, 1358 (1974).

207 Ct.Cl. at 482. *See also Guy v. United States*, 221 Ct.Cl. 427, 440, 608 F.2d 867, 874 (1979) ("In certain exceptional cases, this court can award promotion and back pay above the position an employee actually holds or held but only if there is a clear, legal entitlement to it").

In its motion to dismiss, defendant contends that there is no statute or regulation that creates such a clearcut legal entitlement to a promotion and, therefore, plaintiff's complaint should be dismissed for lack of jurisdiction (RUSCC 12(b)(1)) or for failure to state a claim (RUSCC 12(b)(4)). Defendant presumably moved for dismissal under either Rule 12(b)(1) or 12(b)(4) because its contention that there is no legal entitlement to a promotion arguably can be viewed either as involving an attack on this court's jurisdiction or an attack on the sufficiency of the complaint to state a claim. But under either theory, the same facts and the same legal principles must be evaluated, and the court has determined that the optimum way to address these facts and theories is to treat defendant's motion to dismiss under the summary judgment procedures of Rule 56. As to the motion under Rule 12(b)(1), where, as here, jurisdictional facts are intertwined with the merits of the claim, "the preferable practice is to assume that jurisdiction exists and proceed to determine the merits of the claim pursuant to [Rule 12(b)(4) ] or Rule 56." 2A J. Moore, J. Lucas, & G. Grotheer, Jr., *Moore's Federal Practice* ¶ 12.07[2.–1] at 12–50 (2d ed. 1991); *Lawrence v. Dunbar*, 919 F.2d 1525, 1530 (11th Cir.1990). As to the motion under Rule 12(b)(4), where, as here, the factual arguments presented by the parties reach beyond the facts alleged in the complaint, "the motion shall be treated as one for summary judgment and disposed of as provided by Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." RUSCC 12(b). Consequently, the court informed the parties that it would consider defendant's motion under Rule 56 and, in turn, gave the parties an appropriate opportunity to respond.

### III.

Summary judgment is not a "disfavored procedural shortcut" but rather "an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). The necessary procedures for such a disposition are well-established in case law and commentary. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); 6 J. Moore, W. Taggart, & J. Wicker, *Moore's Federal Practice* ¶ 56.01 *et seq.* (2d ed. 1992); RUSCC 56. In *Maki v. United States*, 13 Cl.Ct. 779, 781 (1987), this court summarized the applicable rules as follows:

> A grant of summary judgment is appropriate only where there is no genuine issue of material fact (*i.e.,* a fact that might affect the outcome of the suit) and the movant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). See *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed.Cir.1987). The moving party bears the burden of establishing the absence of any genuine issue of

material fact. That burden may be discharged by pointing out to the Court that there is an absence of evidence to support the non-moving party's case, *i.e.*, an absence of evidence as to a material fact on which the non-movant bears the burden of proof. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). When the moving party successfully discharges its burden in this way, to defeat the summary judgment motion, the non-movant must present sufficient evidence as to the existence of that fact so that the trier of fact could reasonably find in favor of the non-movant. See *Liberty Lobby,* 106 S.Ct. at 2512. The Federal Circuit has delineated the non-moving party's burden in this respect as follows:

> The non-movant may not rest on its conclusory pleadings but, under Rule 56, must set out, usually in an affidavit by one with knowledge of specific facts, what specific evidence could be offered at trial. *Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.,* 731 F.2d 831, 836, 221 USPQ 561, 564 (Fed.Cir.1984).

*Sweats Fashions, Inc. v. Pannill Knitting Co., Inc.,* 833 F.2d 1560, 1562–63 (Fed.Cir.1987) (quoting *Pure Gold, Inc. v. Syntex (U.S.A.), Inc.,* 739 F.2d 624, 626–27 (Fed.Cir.1984)).

### IV.

Plaintiff's first argument to support his claim that a clearcut legal entitlement to a promotion exists here focuses on the October 4, 1988, order of the Secretary appointing plaintiff to the position of lieutenant commander and on the literal requirements of 14 U.S.C. §§ 271 and 272. As noted above, the October 4, 1988, order states: "The President appoints [plaintiff] to the grade of lieutenant commander, effective on the date of Senate confirmation, or the date vacancies occur, whichever is later." The latter of the two listed events, a vacancy, occurred on June 1, 1990. Plaintiff

---

1. Defendant has not contended that upon issuance of the October 4, 1988, order there were any additional acts necessary for a promotion to

contends, in effect, that the October 4 order, as later purportedly ratified by the President, is self executing and thus created a clearcut legal entitlement to a promotion unless there was both a timely delay under Section 271 *and* a timely removal of plaintiff's name from the selection list under Section 272.[1] Plaintiff then alleges that the respective statutory requirements for a timely delay under Section 271 and timely removal under Section 272 were not satisfied here. The court will discuss the Section 271 delay in this portion of the opinion and the Section 272 removal in Section V below.

Section 271(f) provides that a promotion "may be delayed without prejudice by the Secretary," but only with respect to an officer "who is under investigation or against whom proceedings of a court-martial or a board of officers are pending." Plaintiff contends that the Secretary directed no action at accomplishing a delay before plaintiff's promotion would have become effective, and, in any event, that plaintiff was not an officer fitting within the definition in Section 271(f) of officers whose promotions could be delayed.

Plaintiff's argument that the Secretary did not direct a delay before plaintiff's promotion would have taken effect relies upon a faulty interpretation of an April 23, 1990, memorandum. In that memorandum, the Chief of Personnel and Training concurred in the recommendation that a Special Board consider plaintiff's "moral and professional qualifications" for promotion. The memorandum states, in pertinent part:

> SUBJ: REMOVAL FROM THE LIEUTENANT COMMANDER ACTIVE DUTY PROMOTION LIST UNDER ARTICLE 5–A–13f. and 5–A–4h. [of the Coast Guard Personnel Manual] PERSMAN, AND SECTIONS 271 AND 271 [sic], TITLE 14 U.S.C.
>
> 1. OFFICER CONCERNED: LT JAMES G. LAW, 041 52 1847, USCG
>
> 2. UNIT: COAST GUARD MSD CINCINNATI

be effective except Senate confirmation and a vacancy.

3. REASON FOR REVIEW: Special OER documenting actions which cast doubt on the officers [sic] moral and professional qualifications.

4. RECOMMENDATION:

"Recommend *Special Board*" [hand-written].

Plaintiff does not dispute that the Chief of Personnel and Training is properly authorized to act for the Secretary under Section 271(f).[2] Rather, plaintiff contends that the subject of the April 23 memorandum is the removal of plaintiff from the promotion list and not a delay of his promotion, and, therefore, the memorandum cannot constitute the Secretary's ordering of a delay.

But this is not a plausible interpretation of the memorandum. The subject heading of the memorandum is "*REMOVAL ... FROM THE PROMOTION LIST UNDER 5–A–13f and 5–A–4h.*" Article 5–A–13 of the Coast Guard Personnel Manual generally covers procedures for effecting promotion of officers, and the specifically referenced 5–A–13(f) covers "*Delay* of Promotion" (emphasis added). By concurring in the recommendation of a Special Board and specifically referencing the promotion delay provision of the Personnel Manual,

the April 23, 1990, memorandum clearly anticipates a delay in plaintiff's promotion pending consideration by the Special Board of plaintiff's removal from the selection list.[3] Moreover, any possible ambiguity in this regard is resolved in the May 2, 1990, notice to plaintiff in which the Commandant of the Coast Guard specifically indicated that the Chief of Personnel and Training had directed that plaintiff's nomination be "withheld."

Next, plaintiff also misinterprets Section 271(f) in his alternative contention that, in any event, he did not fit within the definition of an officer whose promotion could be delayed because there was no "board of officers" proceeding pending when the Coast Guard purported to delay his promotion. But on April 23, 1990, the Chief of Personnel and Training approved in a "final action" the creation of a "Special Board" to determine whether plaintiff should be removed from the selection list. Under the applicable provisions of the Personnel Manual, Article 5–A–13(f)(2), that board was required to be made up of officers.[4] Therefore, as of the April 23, 1990, approval, a "board of officers" proceeding was "pending" against plaintiff,[5] and plain-

---

**2.** In its Rule 56 statement of facts, defendant stated that the Chief had such authority and plaintiff did not disagree in his statement of genuine issues. *See* 49 C.F.R. §§ 1.2(a), 1.45(a)(1), and 1.46(b).

**3.** Indeed, the reason for review specified in the document is that the special OER "cast doubt on the officer's moral and professional qualifications." Article 5–A–13(f) states, in pertinent part:

(1) It is the responsibility of each officer in the chain of command or Commandant (G–P) to withhold a promotion of officers if there is knowledge that they have disqualified themselves after being placed on a promotion list. Disqualification, as used herein, is deemed to be any circumstance which cast [sic] doubt on the moral or professional qualifications of the officer concerned.

Thus, given the special OER, to comply with Article 5–A–13(f), it was necessary to withhold and hence delay plaintiff's promotion.

**4.** Plaintiff was informed in the May 2, 1990, memorandum that his promotion had been withheld because his case was being referred to a "board of officers."

**5.** The Special Board did not convene until June 11, 1990, which was subsequent to the June 1, 1990, vacancy which plaintiff would have filled in the lieutenant commander roster. But, consistent with defendant's proposed interpretation, the date on which the Special Board was approved, rather than the date on which it first convened, controls when determining whether "proceedings of a ... board of officers are pending." In response, plaintiff cites the delay of promotion provisions applicable to the Armed Forces, 10 U.S.C. § 624(d), and contends that under Section 624(d)(1)(C), a board of officers proceeding must have convened before its proceedings can be deemed to be pending. But, first, there is no provision equivalent to Section 624(d)(1)(C) that applies to the Coast Guard. Second, plaintiff neglects to mention Section 624(d)(2), which provides that the Secretary may issue regulations governing the delay of promotions "in any case in which there is cause to believe that the officer is mentally, physically, morally, or professionally unqualified to perform the duties of the grade for which he was selected for promotion." Hence, for Armed Services personnel, this statute anticipates delays when any information as to an officer's fitness is uncovered, even if there is no board of officers proceeding pending.

tiff fit within the pertinent definition of an officer whose promotion could be delayed under Section 271(f).

■ Plaintiff bases his disagreement with this conclusion in part on 14 U.S.C. §§ 321–327, which sets forth the procedures to be followed before an officer can be separated from the Coast Guard for cause.[6] Thereunder, the Secretary initially convenes a "board of officers" to determine whether an officer should be required to show cause for his or her retention on active duty. 14 U.S.C. § 321. If a show-cause order is issued, "[b]oards of inquiry" are convened to receive evidence and make findings and recommendations. 14 U.S.C. § 322. During the board of inquiry proceeding, pursuant to 14 U.S.C. § 325, the officer has specified rights, including the right to appear in person and by counsel at the board of inquiry proceedings. Plaintiff apparently contends that the "proceedings of a ... board of officers," to which Section 271(f) refers, must be a separation for cause proceeding under Sections 321–327 or at least must be a proceeding in which the officer is guaranteed the same rights and procedures detailed in Section 325.

In response, first, by its terms, Section 271(f) refers simply to a "proceeding[ ] of a ... board of officers" and does not specify that the proceeding must be a proceeding under Sections 321–327 leading to the possible separation of an officer from the Coast Guard. Here, the Coast Guard Personnel Manual provides for the convening of a board of officers when an issue arises as to whether an officer should be removed from a selection list for promotion. Nothing in any statute or regulation cited by plaintiff provides that a board of officers can only be used where the issue is one of possible separation from the Coast Guard. Nothing prohibits the Secretary, as provided in the Personnel Manual, from using a "board of officers" when the sole determination to be made is whether an officer should be removed from a promotion selection list. Hence, defendant's interpretation

of Section 271(f) as encompassing a board of officers proceeding looking only into possible removal of plaintiff from the selection list is both reasonable and correct.

■ Second, there is no statutory guarantee that Section 325 rights and procedures apply to such a board of officers proceeding looking into possible removal of an officer from a selection list. Section 325 specifies that the rights and procedures therein apply to a board of inquiry proceeding pursuant to Section 322, which involves officers being considered for removal from the Coast Guard. There is no suggestion in Section 325 that these rights and procedures apply for any other type of board of officers proceeding. Here, the board of officers was looking into the removal of plaintiff's name from the promotion selection list, a far less severe sanction than the removal of plaintiff from the Coast Guard. Since the two sanctions are distinct, the court cannot reasonably imply that Congress intended the same rights that apply to a Section 322 inquiry to apply to the instant board proceeding. There certainly is no statement to this effect in the statute.

## V.

Next, plaintiff argues that even if a proper delay under Section 271 occurred, there was no Section 272 removal of plaintiff from the promotion list and, therefore, the promotion took effect under the provisions of the statute. Section 271(f) provides that any delay shall be "without prejudice" and sets a maximum promotion delay of one year from the date on which the officer otherwise would have been promoted, unless "the Secretary determines that a further delay is necessary in the public interest." It is not disputed that the Secretary never made such a public interest finding here. Hence, plaintiff argues, even if there had been a proper delay under Section 271, the October 4, 1988, promotion order would have become effective unless plaintiff's name was removed from the pro-

---

**6.** Plaintiff also cites the similar provisions applicable to the military service under the Department of Defense, 10 U.S.C. §§ 1181–1187. These provisions add nothing of significance to plaintiff's argument.

motion list pursuant to Section 272 within one year after the delay was authorized.

The Secretary, acting "For the President," purported to remove plaintiff from the selection list in March 1991, within this one-year period. But plaintiff argues that this action was not sufficient to effectuate a removal because Section 272(a) grants removal power to the President and the President never issued an order specifically delegating that authority to the Secretary. Hence, plaintiff argues, in the absence of a proper removal, the promotion took effect and, therefore, a clearcut legal entitlement to a promotion exists.

But this argument must fail because long-established precedent provides, in effect, that in situations such as this, the actions of the Secretary of Transportation, as head of the pertinent executive agency, qualify as the acts of the President. In 1839, in *Wilcox v. Jackson*, 38 U.S. (13 Pet.) 498, 10 L.Ed. 264 (1839), the Supreme Court considered the authority of the heads of executive departments to act on behalf of the President. Therein, the pertinent statute provided that land could be reserved for military purposes "by order of President" and the Court was asked to assess the sufficiency of a reservation that had been made by the Secretary of the War. The Court found the reservation sufficient and explained:

> [T]he immediate agent in requiring this reservation was the secretary of war, yet we feel justified in presuming that it was done by the approbation and direction of the President. The President speaks and acts through the heads of the several departments in relation to subjects which appertain to their respective duties.... [M]ilitary posts ... belong to the war department. Hence, we consider the act of the war department in requiring this reservation to be made, as being in legal contemplation the act of the President; and, consequently, that the reservation thus made was in legal effect, a reserva-

tion made by order of the President, within the terms of the act of congress. *Id.* at 513.

A long line of subsequent cases adopted the *Wilcox* approach and allowed the head of the pertinent executive agency to serve as the President's alter ego and make determinations assigned by statute to the President that directly relate to the agency's work. *See, e.g., United States v. Farden*, 99 U.S. 10, 19, 25 L.Ed. 267 (1879) (Secretary of Treasury's suspension of a revenue collector); *United States v. Fletcher*, 148 U.S. 84, 90–91, 13 S.Ct. 552, 554, 37 L.Ed. 378 (1893) (Secretary of War's dismissal from service of an Army officer); *D'Arco v. United States*, 194 Ct. Cl. 811, 816, 441 F.2d 1173, 1175 (1971) (removal of a Marine officer from a promotion list); *Brownfield v. United States*, 148 Ct.Cl. 411, 416–17 (1960) (termination of a temporary appointment to a higher Air Force rank); *Seltzer v. United States*, 98 Ct.Cl. 554, 561 (1943) (discharge of an Army officer from active duty). Here, the Secretary of Transportation may act as the alter ego of the President under Section 272(a) because the Coast Guard "belong[s] to" the Department of Transportation and the specific decision to delay the promotion of a Coast Guard officer relates to a "subject[ ] which appertain[s] to [the Secretary of Transportation's] ... duties." *Wilcox*, 38 U.S. at 513.

■ Plaintiff notes correctly that in 3 U.S.C. §§ 301 and 302, Congress granted the President the specific authority to delegate responsibilities, such as the removal power of 14 U.S.C. § 272, to other officials and that pursuant to 3 U.S.C. § 301, the President delegated to the Secretary of Defense the President's power under 10 U.S.C. § 629(a) to remove military officers from promotion lists. Exec. Order No. 12,-396, 47 Fed.Reg. 55,897 (1982). But the President's failure similarly to issue an Executive Order specifically authorizing the Secretary of Transportation to remove Coast Guard officers from a promotion selection list does not warrant the conclusion that the President precluded the Secretary from invoking such authority.[7]

---

7. To the extent that dicta in *Martin v. Warner*, 419 F.Supp. 133, 135 (E.D.N.Y.1976), *mem.*, 556 F.2d 557 (2d Cir.1977), and *Martin v. Hidalgo*, Civ. No. 80–3706, slip op. (S.D.N.Y. Dec. 1,

Section 302 contains the caveat that "nothing herein shall be deemed to require express authorization in any case in which such an official would be presumed in law to have acted by authority or direction of the President." Here, for the reasons summarized above, under the case law which preceded Section 301, the Secretary of Transportation would be presumed in law to have acted for the President when determining to remove a selectee from a promotion list.[8] Hence, any delegation under Section 301 to the Secretary of Defense, who does not have authority over the Coast Guard, would not eliminate the pre-existing authority of the Secretary of Transportation to exercise such authority for the President in Coast Guard matters.

This interpretation does not render the President's issuance of Executive Order 12,396 covering the Armed Forces a futile, unnecessary act. Section 3 of that order specifically allowed the head of the agency to redelegate the authority. Under the alter ego precedent discussed above, only the head of the agency, and not his or her subordinates, may act for the President. *Truitt v. United States,* 38 Ct.Cl. 398, 404–405 (1903).

Next, plaintiff contends, in effect, that even assuming the *Wilcox* approach generally applies, the presumption of presidential action through the Secretary is rebuttable and summary judgment should not be granted until plaintiff is permitted to conduct certain specific discovery which plaintiff alleges will help him rebut the presumption. Plaintiff seeks, *inter alia,* information as to whether (1) the facts of his case were ever presented to the President, (2) the President personally exercised or declined to exercise the removal power under Section 272, or (3) the Secretary has ever previously exercised the President's removal power under Section 272.

But this discovery is not material to resolution of defendant's summary judgment motion. Under *Wilcox* and its progeny, it is not material whether the President had in fact approved the removal of plaintiff's name from the promotion list or that the President considered or even heard of plaintiff's case. Nor would it be material whether the President or the Secretary previously had exercised Section 272 removal powers. The presumption that the head of an agency acts for the President does not arise from any presumed communication between the President and the head of an executive agency. Nor does it arise from a course of dealing between Presidents and department heads. Rather, it arises by virtue of the President's authority over the executive branch and the relationship between the presidential power in issue and the work of the particular agency involved. As explained in *Wilcox,* "[t]he President speaks and acts through the heads of the several departments in relation to subjects which appertain to their respective duties," and the "legal effect" of an agency head's action in this setting is that of an "order of the President." 38 U.S. at 513.

## VI.

■ Next, plaintiff presents an alternative argument to support his contention that a clearcut legal entitlement to a promotion exists here. Plaintiff argues that even if the literal requirements for a Section 271 delay and a Section 272 removal were satisfied, the procedures followed and judgments made by the Coast Guard and the Secretary when delaying the promotion and removing plaintiff from the promotion list were legally deficient and hence could not properly support an action under Sections 271 and 272. Plaintiff faults the Coast Guard and the Secretary in numerous ways. For example, plaintiff contends that (1) the OER upon which the delay was based did not satisfy the requirements of the Personnel Manual, (2) the OER was based upon a sexual harassment investigation that was conducted in violation of the

---

1980), suggests a different conclusion, this court respectfully disagrees with those decisions.

**8.** Sections 301 and 302 were first enacted in the Act of Aug. 8, 1950, Ch. 646, Pub.L. No. 673, 64

Stat. 419, and were subsequently recodified as a separate Chapter in 3 U.S.C., per the Act of Oct. 31, 1951, Pub.L. No. 248, 65 Stat. 713.

procedures for such investigations set forth in the Coast Guard's Military Civil Rights Manual,[9] (3) inadequate procedures were used in the creation of the board of officers which recommended plaintiff's removal from the selection list,[10] (4) inadequate procedures were used by the Special Board,[11] (5) the Special Board's report was insufficient,[12] (6) with respect to the removal, neither the Secretary nor the Commandant were furnished all of plaintiff's pertinent submissions and the Secretary was furnished certain documents with which he should not have been furnished,[13] and (7) with respect to the BCMR decision not to order a change in plaintiff's records, the Secretary failed to select members of the BCMR who were independent of the Secretary and, in addition, the BCMR failed adequately to explain its conclusions in its decision.

But the fatal defect in plaintiff's attack on the decision-making process and on the decisions made is that even assuming plaintiff is correct that the procedures followed were erroneous and the explanation of the decisions were otherwise inadequate, this would not be a sufficient basis for this court to order a promotion. As explained in *Doggett*, "[the courts] have repeatedly refused to interject [them]selves into the discretionary military promotion process even if legal error was in some respect committed as to the complaining serviceman." 207 Ct.Cl. at 482. For the court to

award a promotion, there must be a "clear-cut legal entitlement to the pay of a higher grade." *Id.* As explained above, the literal requirements of Sections 271 and 272 were met and the President, through the Secretary of Transportation, exercised the President's discretionary authority to remove plaintiff from the promotion selection list prior to the promotion being effective. There is no statute or regulation that provides that a delay under Section 271 or a removal from a promotion list under Section 272 is not effective if the decision to delay or remove is based upon procedural defects such as those alleged here.[14]

Awarding a promotion based on these alleged procedural defects would be inconsistent with the statutory scheme designed by Congress for promotions in the uniformed services. As summarized above, under Section 272, the decision to remove a Coast Guard officer from a promotion selection list is within the discretion of the President and his alter ego, the Secretary of Transportation. Herein, the Coast Guard became aware of information that raised into question the appropriateness of promoting plaintiff to the rank of lieutenant commander and, based on that information, conducted an inquiry which led to the OER and, ultimately, the removal of plaintiff's name from the selection list. Plaintiff's arguments to this court relate generally to the procedures used in investigating

---

**9.** For example, the investigation did not satisfy the Civil Rights Manual requirement that investigative interviews be conducted by a chief petty officer or higher ranking officer and that witnesses be sworn.

**10.** Plaintiff contends that no effort was made to exclude from the Special Board officers who had previously functioned in plaintiff's case.

**11.** Plaintiff contends the Special Board (a) conducted the "lion's share" of its deliberations before receiving plaintiff's response to the proposed action, (b) was never furnished a copy of certain papers filed by plaintiff, and (c) considered *ex parte* information from plaintiff's chain of rating officers.

**12.** Plaintiff contends the Special Board's report failed to explain in detail the reasons for its recommendation as required in Article 5-A-13f(4) of the Personnel Manual and incorrectly

implied that plaintiff's commanding officers unanimously supported removal of plaintiff's name from the promotion list.

**13.** Plaintiff alleges that the Special Board's report contained misleading information and the Secretary was not given plaintiff's letters and other submissions in his case.

**14.** *Skinner v. United States,* 219 Ct.Cl. 322, 329, 594 F.2d 824 (1979), upon which plaintiff relies, does not provide to the contrary. The plaintiff in *Skinner* abandoned his claim for promotion, *id.* 594 F.2d 824, 219 Ct.Cl. at 325, and the court recognized that claims for promotion are to be treated differently than claims for reinstatement following improper discharge, *id.* 594 F.2d 824, 219 Ct.Cl. at 332–33. *Cf. Bray v. United States,* 207 Ct.Cl. 60, 64, 515 F.2d 1383 (1975) (damages denied in part because "the Air Force well might have refused to permit re-enlistment").

plaintiff and the processing and making of decisions based upon the results of that investigation. But, even if this court concluded that the procedures followed were defective and the explanations inadequate, the court would not be in a position to predict with certainty whether, had the proper procedures been followed, the President, acting through the Secretary, would have exercised his discretion and promoted plaintiff.

Plaintiff contends that certain of the allegations against him were untrue and others were misperceived by his subordinates. But the court cannot measure how many inappropriate acts are too many or, in any event, what level of concern or disrespect for an officer by his subordinates would have caused the President to refuse to promote plaintiff. In the setting of this case, there simply are no standards by which the court may distinguish conduct and perceptions that would, in the view of the President, warrant the denial of a promotion to plaintiff from those that would not. *See Voge,* 844 F.2d at 780. In the absence of such certainty, a decision by this court to promote plaintiff would involve a usurpation of the discretion granted the President to select officers for promotions and to remove their names from selection lists. There simply is no statute or regulation that creates a right to a promotion as a matter of law and without such a statute or regulation, this court may not grant plaintiff's promotion. *Id.* at 782.[15]

## VII.

■ Finally, plaintiff contends that even if he is unable to point to any other statute or regulation that creates a clearcut legal entitlement to a promotion, he nevertheless is entitled to a promotion based on this court's purported authority under 10 U.S.C. § 1552 to review correction board decisions denying requests for a correction of military records. Plaintiff then contends that had the BCMR's decision been in plaintiff's favor, his rank would have been adjusted to lieutenant commander and under 37 U.S.C. § 204(a)(1) and 14 U.S.C. § 274, he would have been entitled to the corresponding pay and allowances of lieutenant commander. Since the BCMR has the authority to award promotions, plaintiff argues, this court, in its review capacity, may overturn the BCMR decision and award plaintiff a promotion here.

But this ultimately is an unsuccessful "bootstrap" argument. Plaintiff is correct that Section 204(a) contains a clearcut legal entitlement—it entitles an officer to the pay of the rank to which he is "assigned or distributed." But the crucial point here is that neither the President nor the Secretary ever exercised the President's discretionary authority to promote plaintiff to the rank of lieutenant commander. As described above, the promotion was properly delayed and plaintiff was removed from the promotion list before plaintiff was "assigned" to the rank of lieutenant commander. In the absence of an effective assignment, plaintiff never received the entitlement under Section 204 to the pay of the rank of lieutenant commander.

Section 1552 cannot be used to fill the missing link in the legal chain so as to create an entitlement to the protections available under 37 U.S.C. § 204. Section 1552 provides, in pertinent part:

(a) The Secretary of a military department, under procedures established by him and approved by the Secretary of

---

**15.** Because a statute or regulation grants an individual a substantive right to certain procedures does not mean the United States has waived sovereign immunity so as to permit a suit for monetary damages when those substantive rights are violated. *United States v. Testan,* 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). Rather, to establish a waiver of sovereign immunity for a suit for monetary damages, the individual must be able to point to a constitutional provision, statute, or regulation that "in itself ... can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." *Id.* at 402, 96 S.Ct. at 955, *quoting Eastport S.S. Corp. v. United States,* 178 Ct.Cl. 599, 607, 372 F.2d 1002, 1009 (1967). Here, plaintiff has not pointed to any statute or regulation that in itself creates any substantive right with respect to the procedures to be followed in delaying promotions under Section 271 or in removing an officer from a promotion list under Section 272, and which also mandates compensation for a violation of such a right.

Defense, and acting through boards of civilians of the executive part of that military department, may correct any military record of that department when he considers it necessary to correct an error or remove an injustice....

\* \* \* \* \* \*

(c) The department concerned may pay, from applicable current appropriations, a claim for the loss of pay, allowances, compensation, emoluments, or other pecuniary benefits ... if, as a result of correcting a record under this section, the amount is found to be due the claimant on account of his service in the Army, Navy, Air Force, Marine Corps, or Coast Guard, as the case may be....

Thus, Section 1552(a) authorizes the Secretary of a military department to act through correction boards to "correct any military record" and Section 1552(c) authorizes the department involved to pay money due as a result of the board's determination under Section 1552(a). There simply is no entitlement in the wording of Section 1552 to a retroactive promotion and attendant back pay where both the Secretary and the corrections board declined to award the promotion. Because correction boards may exercise whatever secretarial power exists to award promotions does not mean that this court can do the same. The Claims Court is "neither a super corrections board nor a selection board" and lacks authority to promote. *Kien v. United States*, 227 Ct.Cl. 772, 776 (1981) (denying the promotion of a Coast Guard lieutenant to the rank of lieutenant commander).[16]

Indeed, all military personnel apparently are free to ask for corrections of their records in instances where they are denied promotions. Therefore, to interpret Section 1552 to authorize the Claims Court in such cases to overrule a correction board's adverse decision and promote an officer based on the court's own evaluation of the individual's qualifications would place this court in the center of the decision-making process for all denied promotions. Such a

position is precluded by the long line of precedent cited above, which prohibits this court from ordering a promotion unless there is a statute or regulation that contains a clear legal entitlement to a promotion. The wording of Section 1552 contains no such legal entitlement to a promotion where the Secretary and the correction board have determined not to promote.

## CONCLUSION

For the reasons set forth above, defendant is entitled to summary judgment on the grounds that plaintiff has not established any statute, regulation, or order creating a legal entitlement to his promotion, and, therefore, this court may not award plaintiff a promotion and related back pay. Accordingly, the Clerk of the Court is directed to dismiss the complaint. No costs.

IT IS SO ORDERED.

---

**16.** Plaintiff has not cited any case in which the court overturned a correction board decision not to order a promotion where there is no separate statute or regulation that entitles the officer to a promotion.